Carl D. WEHLING and Geraldine D. Wehling, Plaintiffs-Appellants,

v.

COLUMBIA BROADCASTING SYSTEM, Defendant-Appellee.

No. 83–1294
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Dec. 19, 1983.

Westbrook, Schroeder & Piker, Joel W. Westbrook, Edward J. Schroeder, II, San Antonio, Tex., for plaintiffs-appellants.

Baker & Botts, William J. Dyer, Houston, Tex., for defendant-appellee.

Before BROWN, TATE and HIGGIN-BOTHAM, Circuit Judges.

JOHN R. BROWN, Circuit Judge:

Carl Wehling and his wife brought a diversity suit against Columbia Broadcasting System (CBS) for defamation of character and invasion of privacy. On motion for summary judgment, the suit was dismissed based on a defense of truth established by collateral estoppel. We affirm.

CBS aired a television broadcast on CBS *Evening News,* Monday, August 18, 1975. The gist of the report was that Wehling, through a corporate network, defrauded the United States Government and many students through the use of federally funded loans for students attending Wehling's chain of proprietary schools. The broadcast also referred to outdated textbooks and business machines, bogus entrance examinations, and kickbacks to banks making the loans. The broadcast also contained interviews with student to whom fraudulent promises of jobs were made.

CBS asserted the defense of substantial truth to the defamation claim under Texas law. CBS asserted judgments in *United States of America v. Carl D. Wehling,* CR–3–39 (N.D.Tex. Dallas) (federal criminal case) and *State of Texas v. Carl D. Wehling,* 74–C1–14335 (166th Judicial District Court, Bexar County, Texas) (state civil

case) as conclusively establishing its substantial truth defense by collateral estoppel.

The District Court granted summary judgment for CBS. In a memorandum opinion, the District Court applied the federal test for collateral estoppel, which does not require both parties to have been mutually bound by the decision in the previous case. The District Court pointed out that Wehling's counsel, during the argument on Motion for Summary Judgment, conceded that the federal indictment said essentially the same thing about Wehling that the broadcast had said. The court concluded that the guilty verdict by the jury confirmed the truth of the indictment and, thus, of the broadcast.

■ "When a federal court sitting in diversity is considering the collateral estoppel affect of a prior *federal* judgment, this Circuit applies federal common law." *Reimer v. Smith,* 663 F.2d 1316, 1325 n. 9 (5th Cir.1981) (emphasis in original) (citing cases). *See also Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). Thus, the preclusive effect to be given the judgment of the federal criminal case is determined by federal standards. There are three prerequisites to collateral estoppel under federal law:

(1) that the issue at stake be identical to the one involved in the prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Hicks v. Quaker Oats Co.,* 662 F.2d 1158, 1166 (5th Cir.1981). *Accord, Stovall v. Price Waterhouse Co.,* 652 F.2d 537 at 540 (5th Cir.1981); *Johnson v. United States,* 576 F.2d 606, 615 (5th Cir.1978). Complete identity of parties in the two suits is not required. "The federal principle of collateral estoppel precludes re-litigation of an adversely decided issue by a party who has once had a full and fair opportunity to litigate the issue, regardless of whether his present adversary was a party to the previous lawsuit." *Willis v. Fournier,* 418 F.Supp. 265, 266 (M.D.Ga.), *aff'd,* 537 F.2d 1142 (5th Cir.1976). *Accord, Allen v. McCurry,* 449 U.S. 90, 94–95, 101 S.Ct. 411, 414–415, 66 L.Ed.2d 308 (1980).

■ A central issue in the substantial truth defense of CBS is whether Wehling, through the chain of vocational schools he operated, defrauded the federal government by means of student loan programs. This was litigated and affirmatively answered by the guilty verdicts in the federal criminal case. The indictments, the jury charge, the statutes under which Wehling was prosecuted (18 U.S.C. §§ 287, 641 (1976)), and the jury verdict (all of which are part of the record in this case) demonstrate the truth of the broadcast with respect to fraud and irregularity in loan applications, approvals, and disbursements. Moreover, the guilty verdicts returned on counts 2–10 of the indictment in the federal criminal case conclusively establish that Wehling's businesses were not properly refunding to students amounts of unearned tuition paid to Wehling schools with federal loan money.[1] Thus, to reach a guilty verdict on counts 2–10, the jury had to find that numerous students who had incurred liability on student loans and had paid all of the proceeds to Wehling schools as tuition were not given refunds owed to them when the tuition was unearned. The judgment in the federal criminal case thus conclusively established the truth of the CBS broadcast's references to Wehling's defrauding both the United States and students at his schools.

■ The collateral estoppel effect of the state civil judgment is determined by Texas law. *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) (*citing* 28 U.S.C. § 1738 (1976)); *Reimer v. Smith,*

---

1. The theory of fraud in counts 2–10 of the indictment, on which Wehling was found guilty, was that Wehling knowingly caused to be presented to the United States "a false, fictitious and fraudulent claim upon and against HEW ... for the payment of interest ... when the defendant knew such claims would be false ... in that *the unpaid principal balance of a FISL loan note of a student* at CARL WEHLING Businesses *on which interest was claimed was greater than it should have been, since a refund had not been made."* (emphasis added)

663 F.2d 1316, 1325–26 (5th Cir.1981). The Texas Supreme Court recently explained:

> Texas courts have adopted the position that mutuality is required only as to the party against whom the plea of collateral estoppel is asserted. When the persons against whom collateral estoppel operates have had their day in court, either as parties, privies, or through actual and adequate representation, application of the doctrine meets the requirements of due process.

*Bonniwell v. Beech Aircraft Corp.,* 26 Tex.Sup.Ct.J. 259, 260 (citations omitted), rev'd. on other grounds, 663 S.W.2d 816 ("the rule of collateral estoppel operate[s] ... against persons who have had their day in court either as a party to the prior suit or as a privy"). *Accord, Reimer v. Smith,* 663 F.2d 1316, 1326 (5th Cir.1981) ("Texas law now appears to permit collateral estoppel against one who has litigated and lost an issue by one who was not a party to the prior litigation"). Thus, CBS, in its defense of substantial truth, is aided by any facts actually litigated and necessarily decided in the state civil case.

In that case brought by the Texas Attorney General, the jury found that Wehling had used his proprietary schools as his "alter ego." The judgment held him liable for a civil penalty for violation of § 17.46(a) and (b), Tex.Bus. & Comm.Code Ann., a consumer protection statute. The basis for that liability was that "failure to refund unearned student tuition ... constitutes a deceptive trade practice." The judgment permanently enjoined Wehling from (1) failing to properly make refunds to students, and (2) misrepresenting the effect of students' signatures on documents, the nature of documents, or the students' obligations pursuant to the documents. The judgment also ordered that $927,793.60 in restitution be made to certain identified students. There can be no doubt that this establishes the truth of the broadcast's allegation that Wehling was defrauding students at his school.

The CBS broadcast also reported that "there were more serious charges—allegations of Wehling's school giving kickbacks to banks." In his deposition, Wehling acknowledged that his school, with his approval, had made "reimbursements" to the Valley National Bank, that he had sought official approval for the payments, and that the approval was denied and the practice ordered ceased.

This Court has pointed out that under Texas law, "a statement that is substantially true is not defamatory." *Brueggemeyer v. Associated Press,* 609 F.2d 825, 826 (5th Cir.1980) (affirming summary judgment). A Texas court has recently declared:

> The critical test should be whether the defamation, as published, would affect the mind of the reader or listener in a different manner then would the misconduct proved. If the effect on the mind of the recipient would be the same, any variance between the misconduct charged and the misconduct proved should be disregarded.

*Shihab v. Express-News Corp.,* 604 S.W.2d 204, 208 (Tex.Civ.App.—San Antonio 1980, writ ref'd n.r.e.). Because the substance of the CBS report was true, we will not examine any further details of the schools or the broadcast. Summary judgment was properly granted on Wehling's defamation claim.

■ We also affirm the dismissal of Mrs. Wehling's claim of defamation. The District Court was correct in holding that "nowhere in the broadcast was her name mentioned. In Texas, a suit for defamation is personal to the one about whom statements were made." *Keys v. Interstate Circuit, Inc.,* 468 S.W.2d 485 (Tex.Civ.App.—Tyler, 1971, writ dism'd w.o.j.).

■ Likewise, we affirm the dismissal of the invasion of privacy claim based on the telecast's showing of the Wehling residence. The District Court properly held that "the broadcast provided the public with nothing more than could have been seen from a public street. Consequently, no invasion of privacy occurred."

AFFIRMED.