John W. ACKERMAN, et al.

v.

AMERICAN AIRLINES, INC.

Civil A. Nos. 4:93–CV–302–
Y, 4:93–CV–354–Y.

United States District Court,
N.D. Texas,
Fort Worth Division.

Dec. 15, 1995.

Rod Tanner, Gillespie, Rozen & Tanner, Fort Worth, Texas, Carl H. Hoffman, Hoffman & Hertzig, Coral Gables, Florida, and Stuart Arthur Goldstein, Law Office of Stuart A. Goldstein, Miami, Florida, for Plaintiffs.

Donald Edward Herrman, Kelly, Hart & Hallman, Fort Worth, Texas, Lawrence Dale Owens, Law Office of L. Dale Owens, Atlanta, Georgia, Gordon Dean Booth, Jr. and

Scott Anthony Wharton, Booth, Wade & Campbell, Atlanta, Georgia, for Defendant.

### MEMORANDUM ORDER AND OPINION

MEANS, District Judge.

Pending before the Court are defendant American Airlines, Inc.'s ("American") Motion to Dismiss, filed October 12, 1995 (doc. # 135); and American's Motion for Summary Judgment, filed Jan. 24, 1994 (doc. # 48). Having carefully considered the motions, responses, replies, and the applicable law, the Court finds that the motions should be GRANTED.

### I. Statement of Facts

Plaintiffs are former pilots for Braniff Airways ("Braniff I") and its successor, Braniff Inc. ("Braniff II"), who allege that defendant American violated their "first hire" rights under the Employee Protection Program of the Airline Deregulation Act of 1978 ("the EPP"), 49 U.S.C.App. § 1552(d) (recodified as 49 U.S.C. § 42101, et seq. (1994)). Plaintiffs filed suit on October 30, 1992 in the United States District Court for the District of Columbia.[1] On February 1, 1993, Plaintiffs filed an amended complaint adding several plaintiffs,[2] bringing the total number of plaintiffs in the case to 40. Subsequent to the filing of the amended complaint, several plaintiffs were dismissed from this action.[3]

In a related case, Gerald T. Stack, also a former pilot for Braniff I and Braniff II, filed an almost identical suit against five major airlines in the United States District Court for the District of Columbia. That suit was severed as to each of the defendants and *Stack v. American Airlines, Inc.* (No. 4:93-CV-354-Y) was transferred to this Court. By order of the Court dated this same day, *Stack v. American* was consolidated with the above-styled and numbered cause pursuant to Federal Rule of Civil Procedure 42(a). As of the date of this Order, there are 35 remaining plaintiffs.

On October 24, 1978, Plaintiffs were all pilots for Braniff I, employed by Braniff I for at least four years. On May 12, 1982, Braniff I filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code and furloughed all of its employees, including Plaintiffs.

After being furloughed, most of the plaintiffs (27 of 35) submitted employment applications to defendant American.[4] None were hired as pilots by American. American claims that it did not hire any pilots from July 2, 1981 until May 28, 1984.

In early 1984, Braniff I reorganized under Chapter 11. Its name was changed to Dalfort Corporation ("Dalfort"), and Braniff II was formed as a subsidiary of Dalfort. Braniff II recalled Plaintiffs to work in 1984 and they continued to work there until its bankruptcy in 1989 when they were again furloughed.

All of the plaintiffs applied for jobs with American between 1989 and 1992.[5] None

---

1. Plaintiffs filed separate suits in the United States District Court for the District of Columbia against American, United Air Lines, Inc., Delta Airlines, Inc. ("Delta"), and Northwest Airlines, Inc. ("Northwest"). One of the plaintiffs, Gerald Stack, filed a separate suit in that court against all four of these airlines and USAir, Inc. The D.C. District Court, on motion of the defendants, transferred the *Northwest* suit to the District of Minnesota; the *Delta* suit to the Northern District of Georgia; and the *American* suit to this Court. The *Stack* suit was severed as to the several airline defendants and the suits were transferred to these respective courts.

2. The added plaintiffs were: Gary Alleman, Lloyd D. Bryant, Howard Carr, Dale Cross, August Draffkorn, Donald Kelly, Thomas Kyger, Roger Neale, Robert Nolden, John Westerfield, and Robert Williams.

3. Plaintiffs Wayne T. Hoover and Henry Jackson were voluntarily dismissed on June 2, 1993; Plaintiff Ronald G. Brown was voluntarily dismissed on June 16, 1994; Plaintiffs E.R. Christian and John Westerfield were voluntarily dismissed on September 13, 1994; and Plaintiff Darrell Alessi was involuntarily dismissed with prejudice pursuant to Federal Rule of Civil Procedure 41(b) on September 25, 1995.

4. Many also submitted applications to other airlines which resulted in suits against those airlines as well. *See supra* at note 1.

5. Twenty seven of the plaintiffs applied for jobs with American in 1982. All of the plaintiffs applied for jobs with American between 1989 and 1992, after the second furlough. The only other claimed application to American is by Gary Alleman in May 1985 after he was recalled to

was hired by American as pilots. Plaintiffs then filed the present suit.

Plaintiffs filed identical suits against Northwest, which was transferred to the District of Minnesota, and against Delta, which was transferred to the Northern District of Georgia.[6] The actions by plaintiff Stack against Northwest and Delta were also severed by the District Court for the District of Columbia and were transferred to the Minnesota and Georgia district courts. The Minnesota and Georgia district courts each consolidated the *Stack* suit with the *Ackerman* suit. Prior to this opinion, these courts issued dispositive rulings in their respective cases: *Ackerman v. Northwest Airlines, Inc.*, 848 F.Supp. 880 (D.Minn.1994) (*"Northwest I"*), aff'd in part, rev'd and remanded in part, 54 F.3d 1389 (8th Cir.1995) (*"Northwest II"*); *Ackerman et al. v. Delta Airlines, Inc.*, No. 1:93–CV–0973–JOF (N.D.Ga. Sept. 28, 1995) (*"Delta"*).[7]

American moves to dismiss and for summary judgment contending that: (1) Plaintiffs are collaterally estopped from asserting their claims because of the *Northwest II* and *Delta* rulings; and, (2) pursuant to § 43(d) of the Act, American had no duty to hire between July 2, 1981 and May 28, 1984 because American did not hire any pilots during that time.

## II. Collateral Estoppel

■■■ The doctrine of collateral estoppel, which bars subsequent suits by parties who have already had a full and fair opportunity to litigate their claims, is designed to save judicial time and resources and to relieve the burden on litigants of having to litigate claims more than once. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 325–27, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). Non-mutual defensive collateral estoppel bars a plaintiff from litigating the same issue against successive defendants after that issue has been decided adversely to that plaintiff.[8] Under federal law, there are three prerequisites to the application of collateral estoppel:

(1) that the issue at stake be identical to the one involved in the prior litigation;

(2) that the issue has been actually litigated in the prior litigation; and

(3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Wehling v. Columbia Broadcasting System*, 721 F.2d 506, 508 (5th Cir.1983).

■■■ Defendant claims that the judgments of the Eighth Circuit in *Northwest II* and the District Court for the Northern District of Georgia in *Delta* preclude the plaintiffs from relitigating two specific issues in the present action: first, whether Plaintiffs' recall from furlough status in 1984 extinguished any first hire rights that they might have had under the EPP subsequent to that recall; and second, whether the EPP imposes an obligation on a covered carrier to hire pilots during periods when the carrier was not hiring pilots from outside its own work force.[9]

Braniff II. *See* Plaintiffs' Amended Complaint for a detailed account of the dates of the alleged employment applications to American.

**6.** All of the plaintiffs in the instant case are parties to both the *Northwest* case and the *Delta* case, except plaintiff Benny C. Reynolds who is party to *Northwest* but not to *Delta*, and plaintiff Thomas Kyger who is party to *Delta* but not to *Northwest*.

**7.** On October 3, 1994, the District Court for the Northern District of Georgia issued an order on Delta's Motion for Summary Judgment (*"Delta* Summary Judgment Order"). Final judgment was not entered in favor of Delta until September 28, 1995.

**8.** Collateral estoppel may apply regardless of the fact that the defendant was not a party to the prior suit, so long as the plaintiff is the same.

Application of collateral estoppel does not require complete identity of the parties. "The federal principle of collateral estoppel precludes re-litigation of an adversely decided issue by a party who has once had a full and fair opportunity to litigate the issues, regardless of whether his present adversary was a party to the lawsuit." *Meadows v. Chevron, U.S.A., Inc.*, 782 F.Supp. 1189, 1193 (E.D.Tex.1991) (quoting *Willis v. Fournier*, 418 F.Supp. 265, 266 (M.D.Ga.), aff'd, 537 F.2d 1142 (5th Cir.1976)).

**9.** Plaintiffs concede that the EPP imposes no obligation on a covered carrier to hire pilots when the carrier was not hiring outside pilots at all, *See* Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 23, so the Court will not discuss the application of collateral estoppel to this issue in as much detail.

The Court holds that the prior holdings of the *Delta* and *Northwest II* courts preclude the plaintiffs from relitigating the two above-mentioned issues. Each of the three prerequisites for the application of collateral estoppel are met as to each of the issues.

Both the *Northwest II* and the *Delta* courts held that the recall of Plaintiffs in 1984 by Braniff II constituted a rehire by their former carrier within the meaning of 29 C.F.R. § 220.10(c) and, therefore, that recall extinguished their first hire rights under the EPP. *Northwest II*, 54 F.3d at 1397; *Delta* Summary Judgment Order at 14–15. This issue is identical to the one presented in the present action. The plaintiffs are common to all three cases,[10] and they are merely asserting the same cause of action against a different defendant based upon the same general facts. Plaintiffs in this action were recalled by Braniff II in 1984 and assert claims against Defendant based on applications of employment submitted after the recall. The same law is being applied to the same facts, so collateral estoppel may apply.

Also, the issue was actually litigated in both of the prior actions. Each side was given a full and fair opportunity to be heard, as the lengthy written opinions in both *Northwest II* and *Delta* indicate, and the issue was decided against the plaintiffs. Plaintiffs cannot now complain that they did not have an adequate chance to litigate this issue—it has twice been decided unfavorably to them.

The plaintiffs were represented by the same lead counsel in the two prior cases [11] and they are as well in the present case. The plaintiffs in the two prior cases vigorously advocated their position and were adequately represented by counsel; they were given a full and fair opportunity to litigate

their claim; and it was "actually litigated" for purposes of this requirement.

Finally, the determination of the recall issue was necessary to the judgment in both the *Northwest II* and *Delta* cases. The issue was central to the final decision by each court: in *Delta*, the court dismissed all of Plaintiffs' claims, based on applications submitted after the 1984 recall, primarily on its disposition of the recall issue; the *Northwest II* court specifically reversed the lower court and remanded on the recall issue, and conclusively held that the recall by Braniff II constituted a rehire by the former carrier. *Northwest II*, 54 F.3d at 1400. Since the court's holding in *Northwest II* is conclusive on this issue and binding on the lower court, the Court concludes that this constitutes a final judgment on this issue for collateral estoppel purposes.

▪ In their Brief in Opposition to Defendant's Motion to Dismiss, Plaintiffs argue that the application of collateral estoppel is discretionary with the trial court. However, Plaintiffs cite cases which clearly state that the *offensive* use of collateral estoppel is discretionary, not defensive use which is at issue here. The application of defensive collateral estoppel is mandatory when the requirements have been met. *See Montana v. United States*, 440 U.S. 147, 152–55, 99 S.Ct. 970, 973–74, 59 L.Ed.2d 210 (1979). *See also Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327–33, 99 S.Ct. 645, 650–52, 58 L.Ed.2d 552 (1979). Since the three prerequisites to the application of collateral estoppel have been met here, the application of defensive collateral estoppel is mandatory.[12]

▪ Plaintiffs also argue that the presence of prior inconsistent judgments on the issues in question make the application of collateral estoppel inappropriate. Plaintiffs cite *Northwest I*, a Department of Labor

---

Defendant claims a third collaterally estopped issue as to plaintiff Darrell Alessi, however, this Court has already involuntarily dismissed Alessi from this action. *See supra* at note 3. Therefore, the Court will not address the defendant's third argument.

**10.** Of the 35 remaining plaintiffs, 33 were parties to both *Northwest II* and *Delta*. The other two, Reynolds and Kyger, were party to one suit or the other. *See supra* at note 4. Therefore, the

collateral estoppel effect of the identical holdings is equally applicable to both Reynolds and Kyger.

**11.** Stuart A. Goldstein has signed pleadings and papers in all three cases.

**12.** However, even if its application was discretionary, the Court finds that collateral estoppel would be equally applicable to this case.

("DoL") opinion letter, two decisions of the Civil Aeronautics Board ("CAB"), and three bankruptcy court decisions as inconsistent with the holding in *Northwest II* and *Delta* that Braniff II is a successor of Braniff I. (*See* Plaintiffs' Brief in Opposition to Defendant's Motion to Dismiss at 17–18). First, as to the "inconsistencies" in the *Northwest I* decision, the Court will point out that it is extremely dangerous to cite a case that has been reversed on appeal for the exact proposition on which it was reversed.[13] As to the issues on which the *Northwest II* court reversed the *Northwest I* court, there is no inconsistency for collateral estoppel purposes, the circuit court decision controls. Plaintiffs also cite a DoL opinion letter as an "inconsistent prior decision." This is misleading since it is not a "decision" within the present context, and the Court, like the *Northwest II* court rejects it as precluding the use of collateral estoppel. As for the bankruptcy court and CAB decisions, they are cases in different contexts with different parties than the present case and the *Northwest II* and *Delta* cases. The Court finds that these cases are irrelevant to the application of collateral estoppel in this case. The Court, therefore, rejects the plaintiffs' argument that inconsistent prior decisions preclude the application of collateral estoppel to this case since the "inconsistent prior decisions" are irrelevant and inapplicable in the present context.

Plaintiffs also argue that the issues decided in *Northwest II* and *Delta* were pure questions of law and that collateral estoppel does not apply to pure questions of law. Collateral estoppel may apply "to preclude relitigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action." *United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170–71, 104 S.Ct. 575, 578, 78 L.Ed.2d 388 (1984). The narrow exception to this rule is that collateral estoppel does not apply to unmixed

questions of law arising in successive actions involving unrelated subject matter. *Id.* at 171–73, 104 S.Ct. at 579. The Court in *Stauffer* went on to hold that this exception only applies when the successive action "is so unrelated to the prior case that relitigation of the issue is warranted." *Id.* The present case is not so unrelated to the *Northwest II* and *Delta* cases that a relitigation of already decided issues is warranted; the cases are in fact so similar that it would be an enormous waste of judicial resources to relitigate these issues. The *Stauffer* exception does not apply.[14]

Plaintiffs' final argument against the application of collateral estoppel to this case is that they should win on the merits. The doctrine of collateral estoppel is designed to preclude precisely this type of argument. Plaintiffs have twice argued to federal courts that their recall to Braniff II was not a rehire by their former carrier, and they have twice lost on the merits, specifically on that issue. Collateral estoppel will be applied to prevent the waste of judicial resources that would be occasioned by a third hearing of Plaintiffs' arguments. The Court holds that the 1984 recall of Plaintiffs by Braniff II constituted a rehire by their former employer and extinguished their subsequent first hire rights under the EPP.

Defendant also contends that the court's holding in *Delta* that the EPP imposes no obligation to hire pilots, such as Plaintiffs, when it is not hiring from outside its own work force precludes Plaintiffs from again raising that issue here. For the reasons set out above, the Court finds that Plaintiffs are likewise precluded from raising this issue in the present case.[15] The Court, therefore, holds that the EPP imposed no obligation on Defendant to hire Plaintiffs during any time

---

13. The Court presumes that this was not a deliberate attempt by Plaintiffs' counsel to mislead the Court. Otherwise, sanctions would have been imposed.

14. The Court also finds that the issues to which Defendant seeks to apply collateral estoppel are mixed questions of law and fact and therefore,

the *Stauffer* exception would be inapplicable on this ground as well.

15. Plaintiffs concede that the EPP imposes no obligation to hire pilots when an airline is not hiring from outside its own work force. *See supra* at note 9.

it was not hiring from outside its own work force.[16]

## III. Summary Judgment Standard

Summary judgment is proper when the record establishes that no genuine issue as to any material fact exists, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Hill v. London, Stetelman, & Kirkwood, Inc.*, 906 F.2d 204, 207 (5th Cir.1990). To determine whether an issue of material fact exists, the Court must first consult the applicable substantive law to ascertain what fact issues are material to the disposition of the case. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir.1990), *cert. denied*, 510 U.S. 859, 114 S.Ct. 171, 126 L.Ed.2d 131 (1993). The court must then review the evidence presented, viewing the facts and inferences drawn from those facts in the light most favorable to the nonmoving party. *Newell v. Oxford Management, Inc.*, 912 F.2d 793, 795 (5th Cir.1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir.1989). However, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Where the movant bears the burden of proof on a claim or defense, he must establish all elements of the claim or defense to prevail on summary judgment. *Western Fire Ins. Co. v. Copeland*, 651 F.Supp. 1051, 1053 (S.D.Miss.1987), *aff'd*, 824 F.2d 970 (5th Cir.1987).

When the moving party has carried its summary judgment burden, the respondent "must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). The respondent must produce evidence, not merely argument, in response to a movant's properly supported motion for summary judgment. *See Foval v. First Nat'l Bank of Commerce*, 841 F.2d 126, 129 (5th Cir.1988); *Martin v. John W. Stone Oil Distrib., Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

## IV. Summary Judgment Analysis

### A. Claims Arising After Plaintiffs' Recall to Braniff II

After being furloughed by Braniff I in 1982, Plaintiffs were recalled to Braniff II in 1984. The Court has already held that Plaintiffs' recall to Braniff II in 1984 extinguished any subsequent first hire rights.[17] Every plaintiff submitted at least one application to Defendant after the 1984 recall.[18] Taking the facts in the light most favorable to the nonmovant Plaintiffs, as the Court must in its summary judgment analysis, the Court accepts as true the dates of Plaintiffs' applications to Defendant as set out in their amended complaint.

Plaintiffs' claim is that they were entitled to a first right of hire when they applied for employment with Defendant. Since the Court has already held that Plaintiffs first hire rights were extinguished in 1984, any applications submitted after this were not entitled to any preference under the EPP as a matter of law. The Court, therefore, holds that summary judgment should be GRANTED in favor of Defendant as to claims based

---

16. Only the court in *Delta* ruled on this issue, therefore its collateral estoppel effects apply only to plaintiffs who were party to that case. Plaintiff Thomas Kyger was not a party to the *Delta* case, but none of his claims arise from applications submitted during the time Defendant claims it was not hiring (July 2, 1981 to May 28, 1984). Plaintiff Kyger's only claimed application to Defendant was on January 13, 1992, therefore, the Court's ruling on claims which arose between July 2, 1981 and May 28, 1984 do not apply to him. *See* Plaintiffs' Amended Complaint at 6.

17. If any plaintiffs had been furloughed again prior to October 23, 1988, they might have re-gained their first hire rights under the EPP. 29 C.F.R. § 220.10(c), 49 U.S.C. § 42101(a). *See also Northwest II*, 54 F.3d at 1397. However, the Court finds that none were furloughed again prior to October 23, 1988, but that all were furloughed again in 1989 when Braniff II filed for bankruptcy. Plaintiffs do not contest this fact, and the court finds that there is not a genuine issue of material fact as to when Plaintiffs were furloughed for the second time.

18. The earliest post-recall application was submitted in May 1985 by plaintiff Gary Alleman. The rest of the post-recall applications were submitted between 1989 and 1992.

on employment applications submitted after 1984.

## B. Claims Arising Prior to Plaintiffs' Recall to Braniff II

■ Plaintiffs' remaining claims are based on employment applications submitted to Defendant prior to Plaintiffs' 1984 recall to Braniff II. After the original furlough from Braniff I in 1982, 27 of the 35 plaintiffs submitted employment applications to Defendant. Defendant contends that it was not hiring any pilots from outside its own work force during 1982. The Court has already held that if Defendant was not hiring from outside its work force, the EPP imposed no obligation on Defendant to hire Plaintiffs.

Defendant has submitted competent summary judgment evidence to support its contention that it hired no outside pilots between July 2, 1981 and May 28, 1984. Plaintiffs have failed to submit any evidence to create a genuine issue of material fact as to this issue. Plaintiffs instead contend in their response to Defendant's motion for summary judgment that additional discovery should be allowed as to this issue and that additional time is necessary for discovery. Plaintiffs have never come forward with later discovered evidence that Defendant was in fact hiring outside pilots during the relevant period. Nor have Plaintiffs come forward with any basis for believing that additional discovery would uncover such evidence. Since nothing on this issue has been received by the Court since Plaintiffs' March 14, 1994 Brief in Opposition to Defendant's Motion for Summary Judgment, and Plaintiffs have in fact conducted additional discovery since their opposition brief was filed, the Court is left to assume that they have conceded this point.

Defendant has come forward with competent summary judgment evidence supporting its contention that it hired no outside pilots from July 2, 1981 to May 28, 1984. Plaintiffs have failed to produce any evidence to produce a genuine issue of material fact as to this issue. Accordingly, the Court finds that Defendant hired no outside pilots from July 2, 1981 to May 28, 1984.

Since Defendant hired no outside pilots from July 2, 1981 to May 28, 1984, the EPP imposed no obligation on it to hire pilots such as Plaintiffs. Therefore, the Court finds that applications submitted during this period were not entitled to any preference under the EPP as a matter of law. The Court further finds that Defendant is entitled to summary judgment against Plaintiffs on all claims based on employment applications submitted between July 2, 1981 and May 28, 1984.

## V. Conclusion

The Court holds that the 1984 recall of Plaintiffs by Braniff II constituted a rehire by their former carrier within the meaning of 29 C.F.R. § 220.10(c), and extinguished any subsequent first hire rights they might have had under the EPP. The Court also holds that Plaintiffs are collaterally estopped from relitigating this issue in the present case by the decisions in *Delta* and *Northwest II*.

The Court further holds that the EPP imposed no obligation on Defendant, a covered carrier, to hire protected pilots during any period in which Defendant did not hire pilots from outside its work force. The Court further holds that Plaintiffs are collaterally estopped from relitigating this issue in the present case by the decision in *Delta*.

As to Plaintiffs' claims which are based on applications submitted to Defendant after Plaintiffs were recalled by Braniff II in 1984, the Court finds that there are no genuine issues of material fact remaining to be resolved and that Defendant is entitled to judgment as a matter of law.

As to Plaintiffs' claims which are based on applications submitted to Defendant between July 2, 1981 and May 28, 1984 when Defendant was not hiring outside pilots, the Court finds that there are no genuine issues of material fact remaining to be resolved and that Defendant is entitled to judgment as a matter of law.

It is, therefore,

ORDERED that Defendant's Motion to Dismiss based on Collateral Estoppel is GRANTED IN PART as set forth above.

ORDERED that Defendant's Motion for summary judgment is GRANTED IN PART as set forth above.

ORDERED that to the extent they are not specifically ruled on above, Defendant's Motion to Dismiss and Motion for Summary Judgment are MOOT.

ORDERED that JUDGMENT be and is hereby GRANTED in favor of Defendant against plaintiffs John W. Ackerman, Gary Alleman, Richard A. Brannock, Lloyd D. Bryant, Robert W. Burk, Howard Carr, Dale Cross, Thomas E. Davis, August Draffkorn, Roger L. Duncan, Robert T. Freeman, William D. Freeman, Arbie J. Gest, William Good, Edward S. Hodge, James C. Hook, Estate of William H. Jackson, John O. Johnson, James B. Jones, Donald Kelly, William J. Koberick, Thomas Kyger, Richard D. Luthi, Jerry L. Myers, Roger Neale, Robert Nolden, Benny C. Reynolds, Paul E. Schueler, W. Don Shelby, Gerald T. Stack, Estate of Kenneth L. Sukla, Richard R. Walker, Maynard D. Week, Robert L. Williams, and Lewis Wollery.

SO ORDERED.