REVISED October 28, 2009

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 22, 2009

Charles R. Fulbruge III
Clerk

No. 08-10143

RABO AGRIFINANCE INC; AG ACCEPTANCE CORPORATION

Plaintiffs-Appellees

V.

TERRA XXI LTD; VEIGEL FARM PARTNERS; VEIGEL FARMS INC;
GRAIN CENTRAL STATION INC; VEIGEL GRAIN COMPANY;
ROBERT W VEIGEL; ELLA MARIE VEIGEL; STEVE VEIGEL;
TERRA PARTNERS

Defendants-Appellants

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, Chief Judge, and WIENER and BENAVIDES, Circuit Judges.

EDITH H. JONES, Chief Judge:

This is at least the sixth case, the fourth before the Fifth Circuit, arising

out of a series of loans made by Appellee Rabo Agrifinance, Inc.[1] to a collection

---

[1] Rabo Agrifinance is the successor-in-interest to Ag Services, Inc. Ag Acceptance is a wholly owned subsidiary. In the interest of clarity, this opinion refers describes "Rabo Agrifinance" as responsible for actions actually taken by "Ag Services." Except where the identity of creditor is relevant for this appeal, this opinion will not distinguish between Rabo Agrifinance and Ag Acceptance.

of partnerships and corporations ("the Veigel entities").[2] Following defaults on these loans, Appellees sought to foreclose on their security interests in the collateral. The district court allowed the foreclosure, and the property was sold at auction. The Veigel entities appeal, arguing: (1) the statute of limitations barred collection of the underlying debt and thus, under law, barred the foreclosure, (2) even if the foreclosure was appropriate, one of the entities, Terra Partners, should be subrogated to a superior lien position in some of the equipment, and (3) the district court erred by awarding attorneys' fees. We reject the appellants' challenges to collection of the debt and affirm the award of attorneys' fees.

## I. BACKGROUND

Rabo Agrifinance loaned Veigel Farm Partners and Terra XXI approximately $1.8 million between 1997 and 1999 for conducting farming operations in Deaf Smith County, Texas ("the Secured Farming Loans"). This debt was secured by: (1) a second lien on roughly 5,600 acres of real property, (2) a second lien on irrigation equipment, and (3) a first lien on other farming equipment. The real property was already encumbered by a first lien for more than $3 million held by First Ag Credit Corporation, and the irrigation system was subject to a purchase money security interest for roughly $550,000. Various Veigel entities guaranteed all of these debts.

In 1999, Veigel Farm Partners defaulted on the irrigation system debt. Diversified Financial Services, which had acquired the debt, sued the debtors

---

[2] Appellants form a complex web of partnerships and corporations, all ultimately controlled by a limited number of individuals. In a filing before the district court in a related case, Steve Veigel signed an agreed order on behalf of thirteen entities: Veigel Farm Partners d/b/a Veigel Partners, Terra XXI LTD, Veigel Farms Inc., Grain Central Station Inc. d/b/a Veigel Grain Company, Veigel Kirk, Inc., Steve Veigel Inc., Terra Partners, Vicki Veigel Inc., Veigel Cattle Company, Burnett & Veigel, Inc., Kirk & Veigel Inc., Massey, Kirk & Veigel Inc., and himself.

Robert "Bob" Veigel, Steve Veigel's father, signed on behalf of Bob Veigel Inc., Williams and Veigel Inc., and himself. Ella Marie Veigel signed for herself.

and guarantors in state court and obtained a roughly $550,000 judgment against various Veigel entities, including Robert Veigel. In November 2003, Ag Acceptance acquired the $550,000 judgment and first lien rights in the irrigation system from Diversified.

Veigel Farm Partners and Terra XXI both filed for bankruptcy protection in late 2000. The reorganization plans ultimately allowed and provided for all of the debts, together with the security interests. As part of the bankruptcy proceedings, Veigel Farm Partners and Terra XXI sued the Appellees. The parties settled this suit in October 2002 and agreed to reduce the Secured Farming Loans (by this point, paid down to roughly $1.6 million) to $1.5 million, without disturbing the liens securing them.

In September 2003, Terra XXI and Veigel Farm partners defaulted on the now-reduced Secured Farming Loans,[3] and Ag Acceptance foreclosed its second lien position in the 5,600 acres. Because the property was encumbered by superior liens for more than $3 million, Ag Acceptance purchased the property for $20,000 at the foreclosure sale, which it credited against the amount owed.

The limited return from the foreclosure sale left a large deficiency on the Secured Farming Loans. Rabo Agrifinance sued to collect the deficiency on September 1, 2005, near the expiration of the two-year statute of limitations. Rabo Agrifinance, Inc. v. Veigel Farm Partners, 2008 WL 341425, No. 2:05-CV-243 (N.D. Tex., Feb. 7, 2008) ("Deficiency Suit").

With the Deficiency Suit pending, Rabo Agrifinance filed the instant suit for a temporary restraining order in Texas state court on June 7, 2006, seeking to prohibit "the Veigels, or any of their employees or agents, from injuring, destroying, damaging, or wasting the collateral . . . in any manner" and to

---

[3] Appellants deny that Terra and Veigel Farms defaulted on this debt. The state courts rejected this argument in Terra XXI, Ltd. v. Harmon, 279 S.W.3d 781, 787–88 (Tex. App.—Amarillo, 2007, pet. denied).

prohibit "the Veigels, or any of their employees or agents, from removing any of the collateral." Because the 5,600 acres had already been foreclosed upon, the remaining collateral comprised farming equipment on which the Appellees held the first lien pursuant to the Secured Farming Loans and the irrigation system on which the Appellees, having bought out Diversified's interest, now also held the first as well as second lien positions. The Appellants removed this case to federal court based on diversity. On June 30, Robert Veigel, as guarantor, paid $551,052.21 to satisfy the judgment for the debt secured by the first lien in the irrigation equipment. He then filed a notice that he claimed a right of contribution from the other defendants and later assigned his rights to Terra Partners.[4]

---

[4] Terra Partners is the only Veigel entity that does not owe money, either directly or as a guarantor, to the Appellees. In a state court action, a filing by the Veigel entities described Terra Partners as "a Texas general partnership consisting of four Texas corporations, headquartered in Deaf Smith County, Texas: Williams & Veigel, Inc.; Burnett & Veigel, Inc.; Kirk & Veigel, Inc.; and Massey, Kirk & Veigel, Inc." A district court described Terra Partners when analyzing whether certain transfers to it were fraudulent:

Terra Partners was formed in 2000 to farm the property just as Veigel Farm Partners did before going bankrupt. All but one person with an interest in Veigel Farm Partners also has an interest in Terra Partners. Terra Partners has never been liable to [Rabo Agrifinance and Ag Acceptance]. Terra Partners is comprised of four corporate partners owned by Robert Veigel's family members . . . . Terra Partners has never filed a tax return.

Robert Veigel owns Williams & Veigel. Steve Veigel, his son, owns Burnett & Veigel. Robert and Steve Veigel are the chief participants in Terra Partners. They have written checks from Terra Partners' bank account and have used Terra Partners' debit card for personal expenses such as meals, lingerie, taxes on a personal residence, camp, a speeding ticket, a television, a trip to Six Flags, a visit to a chiropractor, and a visit to a dentist. Robert Veigel at one point wrote a check from Terra Partners to Amarillo National Bank with the notation for "BV's safe deposit." Between 2004 and 2006, Steve Veigel drafted and cashed many checks made payable to Burnett & Veigel and bearing the notation "advance." Burnett & Veigel has not filed a corporate tax return since 2001. Steve Veigel testified that he has not filed a personal income tax return for "several years." Robert Veigel has not filed an income tax return for at least four years. Steve and Robert Veigel argue that the purchases by check and debit card were loans to Williams & Veigel and Burnett & Veigel. Defendants do not have an accounting of the personal expenses that were allegedly borrowed.

In February 2007, the Appellees amended their pleading in this case to seek a declaratory judgment of their interest and judicial foreclosure on the farm equipment, including the irrigation system. The Veigel entities responded that collection of the debt was barred by limitations; Terra Partners owned some portion of the equipment; some items on the land were not equipment but were personal property; and because of the assignment of rights from Robert Veigel, Terra Partners was subrogated to the first lien interest in the irrigation equipment.

Separately, the Veigel entities also defaulted on the $3 million debt to First Ag Credit, which was secured by the first lien in the 5,600 acres. First Ag Credit accelerated the amounts due, and in 2004 Rabo Agrifinance acquired the debt and senior lien from First Ag Credit. Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 2006 WL 2828748, at *1, No. 2:05-CV-314 (N.D. Tex. Oct. 4, 2006), affirmed by Rabo Agrifinance Inc. v. Terra XXI Ltd., 257 Fed. Appx. 732 (5th Cir. 2007) (per curiam) (unpublished). Rabo Agrifinance sued the Veigel entities that were liable for these notes and received a $3.8 million judgment. Id. at *5. In an attempt to collect on this judgment, Rabo Agrifinance attempted to foreclose on 960 acres owned by various Veigel entities and sued to quiet title, challenging certain transfers of the real property as fraudulent. AG Acceptance Corp. v. Veigel, 564 F.3d 695, 697–98 (5th Cir. 2009) ("Transfer Suit").

The district court held back-to-back bench trials in this case and the Transfer Suit. AG Acceptance Corp. v. Veigel, 2007 WL 6889358, 2007 U.S. Dist. LEXIS 63763, No. 2:06-CV-272 (N.D. Tex., Aug. 29, 2007); Rabo Agrifinance, Inc. v. Terra XXI Ltd., 2007 WL 2446278, No. 2:06-CV-153 (N.D. Tex., Aug. 29, 2007).

---

AG Acceptance Corp. v. Veigel, 2007 WL 6889358, at *2, 2007 U.S. Dist. LEXIS 63763, at *4–5, No. 2:06-CV-272 (N.D. Tex., Aug. 29, 2007); affirmed in relevant part by Ag Acceptance Corp., 564 F.3d at 700–01.

The parties stipulated that the court, in deciding each case, might consider evidence from either. The district court released opinions in both cases on the same day, finding that the creditors validly foreclosed on the real property in the Transfer Suit, 2007 WL 6889358, at *7, 2007 U.S. Dist. LEXIS 63763, at *26–27, and in this case, that (1) aside from some minor items found to be personal property, the Appellees could foreclose on the equipment and (2) "Terra Partners does not have a subrogated interest in the irrigation system." 2007 WL 2446278, at *11. The district court later awarded attorneys' fees to the plaintiffs in both cases.[5]

To complete this recitation, the district court entered judgment in the Deficiency Suit for Rabo Agrifinance, yielding a net judgment exceeding $1.3 million after a credit for the foreclosure sale proceeds on the equipment and irrigation system.[6] The foreclosure auction occurred in April 2008.

Appellants pursue this appeal of the equipment foreclosure judgment. Following a bench trial, this court reviews the district court's legal determinations de novo and its factual findings for clear error. Flint Hills Resources LP v. Jag Energy, Inc., 559 F.3d 373, 375 (5th Cir. 2009).

## II. STATUTE OF LIMITATIONS

Appellants argue that the statute of limitations bars this suit. Neither party disputes that under Texas law, an action to foreclose on a debt's security is barred where the statute of limitations has run on the collection of a debt.

---

[5] A panel recently affirmed the district court's decision in the Transfer Case, although it reversed the award of attorneys' fees. AG Acceptance Corp. v. Veigel, 564 F.3d 695 (5th Cir. 2009).

[6] The Veigel entities did not timely appeal this judgment. Their attempt to avoid it with a Rule 60(b)(4) motion was rejected by the district court and this court. Rabo Agrifinance, Inc. v. Veigel Farm Partners, 2009 WL 1362826, No. 08-10817 (5th Cir., May 15, 2009) (unpublished).

McBryde v. Curry, 914 S.W.2d 616, 619 (Tex. App.—Texarkana 1995, writ denied).

When Ag Acceptance foreclosed on the real property on September 2, 2003, a two-year statute of limitations commenced. Tex. Prop. Code § 51.003(a). The Deficiency Suit was filed on September 1, 2005, and could toll the statute of limitations to permit the equipment foreclosure at issue in this case. See In re Herman, 315 B.R. 381, 393–94 (Bankr. E.D. Tex. 2004) (collecting Texas cases). Appellants contend, however, that the statute of limitations barred the Deficiency Suit because Rabo Agrifinance did not actually own the debt at the time it filed the Deficiency Suit, and in any event, it failed to exercise diligence in effecting service of process.

We need not discuss the ownership of the debt in detail because collateral estoppel bars this attack on the validity of the Deficiency Suit judgment. "When a federal court sitting in diversity is considering the collateral estoppel effect of a prior federal judgment, this Circuit applies federal common law." Reimer v. Smith, 663 F.2d 1316, 1325 n.9 (5th Cir. 1981). To establish collateral estoppel under federal law, one must show:

(1)   that the issue at stake be identical to the one involved in the prior litigation;

(2)   that the issue has been actually litigated in the prior litigation; and

(3)   that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

Wehling v. CBS, 721 F.2d 506, 508 (5th Cir. 1983). The parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit. Id.

The defendants in the Deficiency Suit challenged Rabo Agrifinance's ownership of the Secured Farming Loans debt: "They allege that there are inconsistent ownership statements in other evidence before the Court and that

the affidavit evidence [establishing ownership] is insufficient for summary judgment purposes." 2008 WL 341425, at *3. The district court rejected these arguments, finding that while Ag Acceptance owned the debt for some time, "[i]n October 2003, the debt was transferred back to [Rabo Agrifinance's predecessor-in-interest] from Ag Acceptance Corporation." Id. Accordingly, Rabo Agrifinance owned the debt when it filed the Deficiency Suit.

The debt-ownership argument made by the Veigel entities in the Deficiency Suit is the same argument made here. The district court ruled on the issue in that case, and it cannot be relitigated here by those parties who lost in the first proceeding. Further, the relationship among the Veigel entities is sufficiently close to bind all of them before this court to the judgment in the Deficiency Suit. See Southwest Airlines Co. v. Texas Intern. Airlines, Inc., 546 F.2d 84, 95 (5th Cir. 1977).

Appellants next argue that even if Rabo Agrifinance owned the debt, it did not serve them with process until after the expiration of the limitations period. See Gant v. DeLeon, 786 S.W.2d 259, 260 (Tex. 1990) (per curiam) ("When a plaintiff files a petition within the limitations period, but does not serve the defendant until after the statutory period has expired, the date of service relates back to the date of filing if the plaintiff exercised diligence in effecting service."). Appellants assert that Rabo Agrifinance failed to exercise due diligence. The district disagreed, finding that "Plaintiffs used diligence in effecting service in [the Deficiency Suit], using the degree of diligence that an ordinarily prudent person would have used under the same or similar circumstances." Because Appellants have not explained why the district court's conclusion was clearly erroneous, this court will not disturb its ruling. Anderson v. City of Bessemer City, N.C., 470 U.S. 564, 577, 105 S. Ct. 1504, 1515 (1985).

8

### III. SUBROGATION

Terra Partners next argues that it should be subrogated to the purchase-money first lien position in the irrigation equipment because Robert Veigel, who paid off the judgment as a surety, assigned his subrogation rights to Terra Partners. Rabo Agrifinance counters that subrogation is improper because subrogating Terra Partners to the first lien would limit Rabo Agrifinance's ability to collect on the debt secured by the second lien. The district court denied subrogation, finding: "Subrogating Terra Partners to the first lien on the irrigation system will prejudice Plaintiffs. It will limit the extent to which the irrigation system can satisfy the debt at issue in this case."

Texas law recognizes three sources of subrogation rights: equitable, contractual, and statutory. Fortis Benefits v. Cantu, 243 S.W.3d 642, 648–49 (Tex. 2007). Terra Partners relies on a statutory right to subrogation based on section 43.004 of the Texas Civil Practice and Remedies Code,[7] which provides: "A surety who pays on a judgment . . . is subrogated to all of the judgment creditor's rights under the judgment."

If the irrigation equipment secured only the loan from Diversified, there could be no debate that Terra Partners, standing in the shoes of the surety, should be subrogated to Diversified's rights. Rabo Agrifinance distinguishes these facts because the irrigation equipment secured both the Diversified loan and the Secured Farming Loans, and Rabo Agrifinance's predecessor purchased the Diversified loan's judgment and first lien in November 2003.

The district court noted that, "A surety may not acquire a right of subrogation that will prejudice a creditor." Med Center Bank v. Fleetwood, 854 S.W.2d 278 (Tex. App.—Austin 1993, writ denied). While this statement, standing alone, is overbroad, the Restatement (Third) of Suretyship and

---

[7] Formerly Texas Business and Commerce Code § 34.04.

Guaranty explains, "The purpose of subrogation is to reallocate the cost of performance from the secondary obligor [surety] to the principal obligor [debtor]. The mechanism by which this reallocation is accomplished should not cause any disadvantage to the obligee [creditor]." § 27 cmt. b (1996). Where a surety pays only part of a single debt, he cannot receive rights of subrogation. The surety must discharge the entire underlying obligation before achieving subrogation—otherwise the surety would compete with the creditor for recovery, potentially diminishing the creditor's recovery. Id. Texas follows this general rule. Providence Inst. for Savings v. Sims, 441 S.W. 2d 516, 519 (Tex. 1969).

The partial payment exception to subrogation has also long applied where multiple loans by a creditor are covered by its security, and the surety's payment discharges only some of them. The Restatement (First) of Security nicely captures the situation:

> 10. P owes C $3000 and $2000. S is surety for only the $3000 obligation. P has given C a mortgage securing both debts. P defaults, and S pays C $3000. S is not subrogated to the mortgage until C has realized $2000 out of it.

Restatement (First) of Security, § 141, cmt. e. illus. 10 (1941).

These principles validate the district court's conclusion that because Terra Partners was assigned the surety's rights where only partial payment of the Rabo Agrifinance debts had occurred, Terra Partners' interest could not become subrogated to the first lien until all of the Rabo Agrifinance debts were paid off.

Terra Partners relies on a Texas case that did not involve partial payment of the debt. In Med Center Bank v. Fleetwood, supra, the court held that after a bank fully paid off the debt owed to Fleetwood by a real estate developer and secured by a deed of trust on real property, the bank became subrogated to Fleetwood's lien rights in the property. The court acknowledged that when a third party pays off a prior lien on property, it is subrogated to the lienholder's

10

rights in the prior incumbrance "unless the superior or equal equities of others will be prejudiced thereby . . . ." 854 S.W. 2d at 285. Still, the court rebuffed Fleetwood's claim that its 99-year leasehold interest in the property amounted to the type of interest or vested right that the law protects against the intervening subrogation. Med Center specifically distinguishes Fleetwood's underlying leasehold from Texas cases that turn on partial payment of the outstanding debt:

> In a partial-payment situation, the prior creditor is prejudiced by a subsequent creditor assuming a position equal or superior to the lien securing the remaining debt to the prior creditor.

Id. at 286.

Med Center's holding denying subrogation does not govern this case because it is factually inapposite. Med Center's explanation of the law, however, demonstrates why Rabo Agrifinance is prejudiced by a subrogation that would allow Terra Partners to compete on an equal or superior footing for the secured interest in the irrigation equipment. In this partial-payment situation, the exception to a surety's subrogation rights applies.

## IV. ATTORNEYS' FEES

Finally, Appellants contend that the district court erred by awarding attorneys' fees to Appellees. Although this argument was not raised below, we agree with the panel in the Transfer Case, Ag Acceptance Corp v. Veigel, 564 F.3d at 701, and conclude that our precedent clearly establishes that the Texas Declaratory Judgment Act cannot serve as substantive law underlying the award of attorneys' fees, and extraordinary circumstances justify consideration of this issue on appeal. See id.

We affirm the attorneys' fees award on different grounds. Appellees were entitled to attorneys' fees under the debt contracts. Those contracts provide that:

> In addition to the other sums payable hereunder, the undersigned also agree to pay to AgServices all costs and expenses (including reasonable attorney fees, where not prohibited by law) which may be incurred in connection with the enforcement of this note and collection of amounts payable hereunder.

At the district court, Appellants did not challenge Rabo Agrifinance's right to recover attorneys' fees based on the contract, but challenged the reasonableness of the attorneys' fees. The district court held that the fees were reasonable and Appellants do not challenge the reasonableness of fees on appeal. Accordingly, Appellants waive that argument. United States v. Thibodeaux, 211 F.3d 910, 912 (5th Cir. 2000).

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

AFFIRMED.