# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 21, 2012

No. 12-40410

Lyle W. Cayce
Clerk

DENNIS HORN; MARY HORN,

Plaintiffs - Appellees

v.

STATE FARM LLOYDS,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JOLLY, PRADO, and HIGGINSON, Circuit Judges.

HIGGINSON, Circuit Judge:

This appeal centers on whether the phrase "any Hurricane Ike cases," in a contract covering "all Hurricane Ike cases that either have been filed or will be filed in the future," encompasses class-action lawsuits. Concluding that it does, we AFFIRM.

## FACTS AND PROCEEDINGS

In the wake of Hurricane Ike, hundreds of homeowners, many of them represented by the Mostyn Law Firm ("the Firm"), filed claims against State Farm Lloyds ("State Farm") in Texas state court. In many of those cases, homeowners sued individual adjusters in their personal capacities. State Farm

No. 12-40410

removed several of those cases to federal court on diversity grounds. On June 11, 2009, the Firm and State Farm entered into an agreement (the "Agreement") whereby the Firm promised to abandon its clients' claims against individual adjusters and forgo suing them in the future in exchange for State Farm's promise not to remove any Hurricane Ike cases to federal court.

The Agreement, reproduced in its entirety, reads as follows:

> The following agreement will pertain to all Hurricane Ike cases that either have been filed or will be filed in the future by The Mostyn Law Firm against State Farm Lloyds. Hurricane Ike is defined as the storm that occurred on September 13, 2008. This confirms our agreement as follows:

> In exchange for The Mostyn Law Firm's agreement to non-suit with prejudice all claims against individually sued Defendants and The Mostyn Law Firm's agreement to refrain from suing individual Defendants on future Hurricane Ike lawsuits, State Farm agrees not to remove any Hurricane Ike cases filed by your firm to Federal Court. In addition, to the extent possible, State Farm Lloyds will agree to produce an adjuster who was involved in handling the Hurricane Ike insurance claim for deposition and/or trial, without the need for a subpoena. To the extent possible, the adjuster's deposition will take place at State Farm Lloyds' counsel's offices (provided these offices are in or near the county in which the lawsuit is pending), or an agreed upon location.

> In a case where there is a Co-Defendant who may remove, State Farm Lloyds will not grant permission for removal pursuant to 28 U.S.C. § 1446.

> It is also agreed that Plaintiffs will allow inspection of the property within the first 50 days following an appearance, or prior to mediation, at Defendants' option. Any such inspection will not preclude an additional inspection by Defendants, at a later date, during the course of the litigation. If this letter accurately reflects our agreement, please sign in the space provided and return to our office.

No. 12-40410

More than one year after the execution of the Agreement, Plaintiff-Appellee homeowners Dennis and Mary Horn (the "Horns"), represented by the Firm, filed a complaint against State Farm in Galveston County Court alleging that State Farm improperly adjusted their claim for damage to their home caused by Hurricane Ike.  Eleven months later, the Horns restyled their case as a class action by amending their complaint to add a putative class of more than 100,000 Texas residents and property owners.  State Farm timely removed the case to the Southern District of Texas on diversity grounds.  The Horns moved to remand on the basis of the Agreement.  On referral from District Judge Kenneth Hoyt, and after a hearing on the motion to remand, Magistrate Judge John Froeschner issued a Report and Recommendation ("R&R") that the case be remanded to state court, concluding that the phrase "any Hurricane Ike cases" unambiguously encompassed class actions.  Judge Hoyt overruled State Farm's objections, adopted the R&R, and remanded the case to state court.  State Farm timely appealed.

## DISCUSSION

The parties dispute the meaning of the contract phrase "any Hurricane Ike cases."  The Horns submit that the phrase encompasses all past, present, and future lawsuits filed by the Firm against State Farm on behalf of homeowners, as individuals or part of a class, whose properties were damaged during Hurricane Ike.  State Farm responds that the phrase does not encompass class-action lawsuits.  The parties agree that Texas law governs.

In disputes over the meaning of a contract, which we review *de novo*, we first look to the plain language of the contract to determine whether it is ambiguous. *Empire Fire & Marine Ins. Co. v. Brantley Trucking, Inc.*, 220 F.3d 679, 681 (5th Cir. 2000) (applying Texas law).  "In Texas, whether a contract is ambiguous is a question of law." *Addicks Servs., Inc. v. GGP-Bridgeland, LP*, 596 F.3d 286, 294 (5th Cir. 2010) (applying Texas law).  A contract is ambiguous "if

No. 12-40410

its plain language is amenable to more than one reasonable interpretation." *Nautilus Ins. Co. v. Country Oaks Apts. Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009) (applying Texas law). If a contract is unambiguous, we apply its plain meaning and enforce it as written. *Texas v. Am. Tobacco Co.*, 463 F.3d 399, 407 (5th Cir. 2006) (applying Texas law). If a contract is ambiguous, then, and only then, do we consider extrinsic evidence for "the purpose of ascertaining the true intentions of the parties expressed in the contract." *Id.* (quoting *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996)). With those principles in mind, we turn to the language of the Agreement.

The words at issue in this case are "any Hurricane Ike cases." The Agreement defines "Hurricane Ike" as "the storm that occurred on September 13, 2008," but leaves undefined the words "any" and "cases." The Agreement does not indicate that the parties intended a technical or industry-specific meaning for those words, so we give them their "plain, ordinary, and generally accepted meaning." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). Legal or other well-accepted dictionaries are a common method of determining a word's ordinary meaning, as are leading treatises on grammar and word usage. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010) (referencing *Black's Law Dictionary* and *Webster's Third New International Dictionary*); *Hall v. State*, 283 S.W.3d 137, 161 nn.19-20 (Tex. App.—Austin 2009, pet. ref'd) (referencing *The American Heritage Dictionary of the English Language* and *Garner's Modern American Usage*).

The word "any" takes on different meaning depending on the context in which it is used. *See Nixon v. Mo. Mun. League*, 541 U.S. 125, 132 (2004) ("'[A]ny' can and does mean different things depending upon the setting."). Two leading dictionaries instruct similarly that "any" can mean "one," "some," "every," or "all." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 97 (2002); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE 83 (3d ed.

4

1992).   More discerningly, *Garner's Modern American Usage* attaches six meanings to the adjectival form of the word, depending on the kind of sentence in which it appears. Bryan A. Garner, GARNER'S MODERN AMERICAN USAGE 52 (3d ed. 2009).

None of these authorities, nor caselaw brought to our attention, suggests that the word presents intractable ambiguity wherever it is found, only that it must be interpreted in light of the context in which it appears. *See Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 395-96 (5th Cir. 2008) (noting that the phrase "any drug," when read in context, unambiguously meant "every drug," not "only those drugs not compounded by a pharmacy"); *Coal. for Responsible Regulation, Inc. v. EPA*, 684 F.3d 102, 141 (D.C. Cir. 2012) ("Although we agree that the term 'any air pollutant' is, in some contexts, capable of narrower interpretations, we see nothing in the definition of 'major emitting facility' that would allow EPA to adopt a NAAQS pollutant-specific reading of that phrase.").

In the phrase "any Hurricane Ike cases," the word "any" serves as an adjective modifying "Hurricane Ike cases."   The sentence in which it appears—"State Farm agrees not to remove any Hurricane Ike cases filed by your firm to Federal Court."—is a negative assertion.  When "any" is used as an adjective in a negative assertion, the word "creates an emphatic negative, meaning 'not at all' or 'not even one.' " GARNER'S MODERN AMERICAN USAGE, *supra*, at 52; *cf. Dep't of Hous. & Urban Dev. v. Rucker*, 535 U.S. 125, 131 (2002) ("As we have explained, 'the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.' ' " (quoting *United States v. Gonzales*, 520 U.S. 1, 5 (1997))).  That "any" should be read expansively in this context is confirmed by reference to the Agreement's scope provision, which provides that it "will pertain to *all* Hurricane Ike cases that either have been filed *or will be filed in the future* by The Mostyn Law Firm against State Farm Lloyds" (emphasis added). *See Westwood Apex v. Contreras*, 644 F.3d 799, 804

No. 12-40410

(9th Cir. 2011) ("Appellants' focus on the phrase 'any defendant' takes the words out of the context in which they are written; here the word 'any' is being employed in connection with the word 'all' later in the sentence . . . . Given that 'any' and 'all' are used in relation to one another, they should be read that way and interpreted consistently with the sentence's structure."). In light of its adjectival function, its use in a negative assertion, and its proximity to the expansive scope provision, we interpret "any," in this context, to mean "all."

The word "cases," which the contract also does not define, is generally understood to denote "civil or criminal proceeding[s], action[s], suit[s], or controvers[ies] at law or in equity." BLACK'S LAW DICTIONARY 243 (9th ed. 2009). State Farm urges a more narrow construction, but "cases," used in the legal context without an accompanying qualifier, is reasonably susceptible to only one interpretation. *See Nolan v. Boeing Co.*, 919 F.2d 1058, 1066 (5th Cir. 1990). State Farm essentially "asks us to turn back the clock and insert exceptions where it failed to do so; however, Texas law forbids us from granting that request." *Addicks*, 596 F.3d at 297. The parties could have defined "cases" more narrowly, carved out an exception for class actions, or used a different term entirely. *Gilbert*, 327 S.W.3d at 127 (noting that if a party truly intended for a term to be defined narrowly, "it would have been simple to have said so"). Because they did not do so, we give the word its plain and ordinary meaning. *Id.*

The district court concluded, and we agree, that the negotiated contract, apparently drafted by State Farm,[1] covers all past, present, and future lawsuits filed by the Firm against State Farm on behalf of homeowners, as individuals or part of a class, whose properties were damaged during Hurricane Ike. The phrase "any Hurricane Ike cases," in this context, is not amenable to any other

---

[1] The phrasing of the provision, "State Farm agrees not to remove any Hurricane Ike cases filed by *your firm* to Federal Court" (emphasis added), as well as the letterhead on which the Agreement is printed, suggest that State Farm drafted the Agreement.

No. 12-40410

reasonable interpretation. *See Addicks*, 596 F.3d at 294-95 (holding that phrase "any claim for damages" in contract release clause unambiguously encompassed all outstanding claims, noting that it "is comprehensive and not susceptible to the limited interpretation urged by [the appellant]"); *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520-23 (Tex. 1995) (holding that contract provision excluding coverage for "any" pollution damages unambiguously precluded coverage for underlying claims arising out of accidental release of pollutants); *Interstate 35/Chisam Rd., L.P. v. Moayedi*, 377 S.W.3d 791, 800 (Tex. App.—Dallas 2012, no pet. h.) (concluding that although "any" can, in some contexts, mean "one, some, or all"; in the context of the agreement at issue, "the use of the words 'any,' 'each,' and 'every' encompass not just 'some' or 'certain' defenses, but *all* possible defenses that might exist").

State Farm urges us to depart from this understanding of "any Hurricane Ike cases" because it is contrary to the reasonable expectations of the parties. State Farm notes that the Agreement was negotiated and executed at a time when hundreds of individual homeowner cases relating to Hurricane Ike—but not a single class action—had been filed against State Farm. It suggests that the practice of filing claims against individual adjusters in their personal capacities caused extra work for State Farm, just as State Farm's removal of cases to federal court inconvenienced individual homeowners and their counsel. According to State Farm, the agreed-to consideration—State Farm's promise not to remove in exchange for the Firm's promise not to name individual adjusters—was designed to address those specific issues, concerns that had arisen in cases brought by individual homeowners, not class actions.

Although State Farm makes a fair showing that the parties did not anticipate that the Agreement would be extended to class actions, such evidence is not relevant to our inquiry because the plain language of the Agreement captures class actions within its scope. *See Addicks,* 596 F.3d at 294 ("When

parties disagree over the meaning of an unambiguous contract, the intent of the parties must be taken from the agreement itself, not from the parties' present interpretation, and the agreement must be enforced as written." (quoting *Am. Tobacco Co.*, 463 F.3d at 407)) (internal quotation marks omitted). Under Texas law, "the parties' intent is governed by what they said, not by what they *intended* to say but did not." *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006). As the following cases make clear, the Texas Supreme Court has consistently and rigidly applied that principle in cases even where, as here, the contract language arguably diverged from the parties' expectations.

In *SAS Institute, Inc. v. Breitenfeld*, 167 S.W.3d 840 (Tex. 2005), the Texas Supreme Court was called upon to interpret a provision of an employment contract providing for the repayment of a salesperson's commission in the event that the underlying sale was cancelled by the buyer. Notably, even though both parties understood the contract to require the repayment of a commission only if the sale was cancelled *after* the termination of the salesperson's employment, the Court ruled that the clause required repayment even where the sale was cancelled beforehand. *Id.* at 841-42. The Court found that the contract unambiguously covered both scenarios, and cautioned: "[t]he intent of a contract is not changed simply because the circumstances do not precisely match the scenarios anticipated by the contract." *Id.* at 841.

In *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280 (Tex. 1996), the Texas Supreme Court interpreted a brokerage contract between the American Bureau of Shipping ("ABS") and McDade + Company ("McDade") appointing McDade as ABS's exclusive broker but exempting Friendswood Development Company ("Friendswood") from the contract's terms. When Friendswood leased space to ABS that it did not own, McDade sued for breach of, and tortious interference with, the brokerage contract. *Id.* at 282. Again, the Court found the parties' reasonable expectations irrelevant to the contract interpretation

Case: 12-40410    Document: 00512093706    Page: 9    Date Filed: 12/21/2012

No. 12-40410

analysis: even though the parties likely did not anticipate that Friendswood would lease space it did not own, Friendswood was not liable for tortious interference because the plain language of the contract "unequivocally excludes Friendswood from all terms of the McDade/ABS contract, thus allowing Friendswood to lease any space to ABS." *Id.* at 283.

In summary, the question is not whether the parties intended for the contract to govern class actions or anticipated that it would do so, but rather is whether the contract, as written, covers class actions. *SAS Inst.*, 167 S.W.3d at 841; *Friendswood*, 926 S.W.2d at 282-83. The answer to that question, as the lower court found, is "crystal clear."

State Farm argues next that the phrase "any Hurricane Ike cases" should not be read in isolation but rather should be interpreted in the context of surrounding provisions. According to State Farm, an ambiguity arises when the phrase "any Hurricane Ike cases" is read in conjunction with the Agreement's other provisions, which, it argues, make clear that the Agreement was not intended to extend to class actions. We acknowledge the general contract principles that each term should be read in context and a contract should be interpreted to give meaning and effect to every provision, but disagree that the surrounding terms are incompatible with a plain meaning interpretation of "any Hurricane Ike cases."

According to State Farm, the Firm's first promise—to non-suit individual adjusters[2]—would be rendered meaningless by our interpretation of "any Hurricane Ike cases" because a class action could not, consistent with Federal Rule of Civil Procedure 23,[3] be predicated on the actions of an individual

---

[2] In Texas, an individual insurance adjuster is liable for his actions in handling a claim. *See Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 545 (5th Cir. 2004).

[3] Among the prerequisites to class certification is the existence of "questions of law or fact common to a class." Fed. R. Civ. P. 23(a)(2).

adjuster. It is possible, however, even if improbable, that a class action could be based on an individual adjuster's pattern of misconduct. More importantly, it would not be anomalous for State Farm to give up its right to remove class actions in partial exchange for the Firm's promise not to sue individual adjusters in cases filed by individual homeowners. There is no requirement that promises contained in a contract relate to one another.

State Farm argues that the Firm's second promise—to allow State Farm to inspect the subject property within fifty days of a party's appearance—would be impossible to perform in a class action, like this one, implicating over one hundred thousand properties. But State Farm would have little reason to inspect each and every property included in a class action because the subject properties, by rule, would share common issues of fact. If they did not, State Farm would move to strike the class. Rather, as appellants note and State Farm does not dispute, inspection of the properties of the class representatives generally suffices in the class action context.

State Farm argues that its own promise not to consent to removal in a case where a co-defendant seeks to remove would make no sense in the class-action context because the Class Action Fairness Act of 2005 ("CAFA") does not require unanimous consent of defendants as a precondition to removal under 28 U.S.C. § 1453(b). But the subject class action would not necessarily be governed by CAFA if more than two-thirds of the class members are from Texas, where the principal damages were incurred. *See* 28 U.S.C. § 1332(d)(4) (explaining that federal courts shall not exercise subject-matter jurisdiction over class actions in which "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed" and "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed").

No. 12-40410

For the foregoing reasons, the surrounding provisions are not incompatible with, nor are they rendered nonsensical by, our plain language reading of "any Hurricane Ike cases." Although State Farm makes a colorable argument that the parties did not anticipate that the Agreement would be extended to class actions, as noted previously, "[t]he intent of a contract is not changed simply because the circumstances do not precisely match the scenarios anticipated by the contract," *SAS Inst.*, 167 S.W.3d at 841, and "the parties' intent is governed by what they said, not by what they *intended* to say but did not," *Fiess*, 202 S.W.3d at 747.

## CONCLUSION

For the reasons stated above, we AFFIRM the district court's order remanding the case to the 212th Judicial District Court of Galveston County, Texas.