# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-10451

United States Court of Appeals
Fifth Circuit

**FILED**

July 7, 2014

Lyle W. Cayce
Clerk

TRAMMELL CROW RESIDENTIAL COMPANY,

Plaintiff - Appellant

v.

AMERICAN PROTECTION INSURANCE COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:10-CV-2163

Before DENNIS and PRADO, Circuit Judges, and BROWN, District Judge.[*]

PER CURIAM[**]:

Plaintiff Trammell Crow Residential Company ("Trammell Crow") operated a number of apartment complexes in Colorado. Between 2001 and 2004, Trammell Crow was covered by four insurance policies from three different insurance companies—one policy issued by Defendant American Protection Insurance Company ("APIC"), one policy issued by Virginia Surety, and two policies issued by Old Republic. When Trammell Crow was

---

[*] District Judge of the Eastern District of Louisiana, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

sued by residents due to a mold problem, it tendered its defense to Virginia Surety. Virginia Surety later sued APIC seeking contribution, but the court granted summary judgment to APIC finding no contribution was owed. Following the litigation against Virginia Surety, APIC was paid funds from a Trammell Crow expense account to reimburse its costs in defending against Virginia Surety's claims. Trammell Crow then brought this suit against APIC, alleging that Trammell Crow was not required to reimburse APIC's defense costs and that the payment to APIC was improper. APIC counterclaimed, urging that Trammell Crow owed it reimbursement.

The district court granted summary judgment in favor of APIC, and Trammell Crow now appeals. Concluding that Trammell Crow is required to reimburse APIC's defense costs up to the amount of the deductible under the APIC policy, but that the district court improperly determined that Trammell Crow was collaterally estopped from arguing that the deductible had been met, we affirm in part and reverse in part and remand.

## BACKGROUND

This litigation is the third matter in a series of cases involving an insurance policy issued to Trammell Crow by APIC. Trammell Crow operated a number of apartment complexes in Colorado. Between 2001 and 2004, Trammell Crow was covered by four insurance policies from three different insurance companies—one policy issued by APIC (the "APIC Policy"), one policy issued by Virginia Surety, and two policies issued by Old Republic. The APIC policy, which is at issue in the pending case, had a $1,000,000 per occurrence limit with a $250,000 deductible and a $5,000,000 general aggregate limit.

In the first case, known as the "Colorado Litigation," Trammell Crow was sued by several residents regarding a mold problem. Trammell Crow tendered its defense to Virginia Surety, and the claims ultimately settled.

No. 13-10451

In the second matter, known as the "Insurance Litigation," Trammell Crow sued Virginia Surety, alleging that Virginia Surety had refused to pay all of the defense and settlement payments incurred in the Colorado Litigation. Virginia Surety filed a third-party complaint against APIC, seeking contribution toward the defense and settlement costs from the Colorado Litigation. The court granted APIC's motion for summary judgment, finding that APIC did not have a duty to defend or indemnify Trammell Crow in the Colorado Litigation, and thus Virginia Surety was not entitled to contribution.

APIC then billed an expense account owned by Trammell Crow for the costs it incurred in the Insurance Litigation. Trammell Crow, contending that it is not responsible for APIC's defense costs, filed this lawsuit (the "Current Litigation") seeking return of the money that was paid to APIC out of the expense account. APIC counterclaimed requesting compensation for the costs incurred in the Insurance Litigation. The parties filed cross-motions for summary judgment. The district court granted APIC's motion for summary judgment and denied Trammell Crow's motion for summary judgment. The district court found that APIC's defense costs qualified as a "claim expense" under the APIC policy, thus obligating Trammell Crow to pay these costs up to the amount of its deductible. Further, the district court found that Trammell Crow was barred pursuant to the doctrine of collateral estoppel from arguing that the deductible had been met, based on a previous order in the Insurance Litigation. Trammell Crow now appeals these determinations.

No. 13-10451

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). We review a district court's grant of summary judgment *de novo*, construing all facts and evidence in the light most favorable to the non-moving party. *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir. 2009).

With respect to the district court's application of collateral estoppel, "[g]enerally, the issue of whether to apply collateral estoppel is a question of law, making our review *de novo*." *Bradberry v. Jefferson Cnty.*, 732 F.3d 540, 549 (5th Cir. 2013).

## DISCUSSION

### I.

The dispute between Trammell Crow and APIC focuses on whether APIC's costs and expenses in the Insurance Litigation qualify as a "claim expense" under the APIC Policy. In relevant part, the APIC Policy defines "claim expense," stating:

> As used in this endorsement, the words claim expense mean:
>
> . . .
>
> D.     all reasonable expenses incurred by the insured and by us in
>
> > 1.     investigating an occurrence, offense, claim or "suit",
> > 2.     defending a "suit",
> > 3.     pursuing rights of recovery against others, and
> > 4.     investigating, defending and settling any coverage dispute under this policy
>
> but not including wages or salary of any employee of the insured, normal operating or overhead expenses or payments made by the insured under contract with the claim service provider stated in the schedule of this endorsement.

4

No. 13-10451

Under the terms of the APIC Policy, costs qualifying as a claim expense are to be allocated between Trammell Crow and APIC as follows:

> A.    When the total amount of all damages and claim expense paid for all claims or "suits" as a result of any one "occurrence" or offense does not exceed the **Deductible Amount**, we [APIC] will not be obligated to pay any part of the claim expense.

> B.    When the total amount of damages and claim expense paid for all claims or "suits" as a result of any one "occurrence" or offense is in excess of the **Deductible Amount**, we [APIC] will be obligated to pay that part of the claim expense that exceeds the **Deductible Amount**.

As mentioned above, the APIC Policy had a $1,000,000 per occurrence limit with a $250,000 deductible and a $5,000,000 general aggregate limit.

Trammell Crow argues that the term "claim expense" does not include the attorneys' fees and litigation costs that APIC incurred in defending against Virginia Surety's third-party complaint in the Insurance Litigation. Trammell Crow points to the policy's definition of "claim expense," noting that subsection D provides that reasonable expenses must be incurred by Trammell Crow *and* APIC, as opposed to stating that the expenses may be incurred by *either* Trammell Crow *or* APIC. Drawing on the distinction between "and" and "or," Trammell Crow reasons that there are no joint expenses at issue; rather APIC's defense costs were only incurred by APIC. Accordingly, Trammell Crow maintains that these costs do not qualify as a "claim expense."

Alternatively, Trammell Crow argues that if APIC's costs in the Insurance Litigation qualify as a "claim expense," then Trammell Crow would be deemed to have met its deductible and therefore should not be obligated to reimburse APIC for APIC's defense costs to the extent that they exceed the deductible. According to Trammell Crow, it is not collaterally estopped from making this argument. Trammell Crow asserts that APIC did not raise the issue of collateral estoppel before the district court; rather the district court

5

addressed collateral estoppel *sua sponte*. Further, Trammell Crow maintains that the requisite factors for collateral estoppel are not met here.

According to APIC, its costs in the Insurance Litigation qualify as a claim expense because the word "and" in subsection D should be interpreted as "either or both." Additionally, APIC contends that Trammell Crow is precluded from asserting that the deductible on the APIC Policy has been met on the grounds of collateral estoppel. APIC argues that in the Insurance Litigation, the district court found that APIC had no duty to indemnify Trammell Crow because Trammell Crow had not met its deductible.

## II.

The first issue presented in this appeal is whether APIC's defense costs from the Insurance Litigation qualify as a "claim expense" under the policy. In diversity cases, this court applies the substantive law of the forum state. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Thus, in this case, we apply Texas law to determine the meaning of "claim expense."

In examining an insurance policy under Texas law, this court first "look[s] to the plain language of the contract to determine whether it is ambiguous." *Horn v. State Farm Lloyds*, 703 F.3d 735, 738 (5th Cir. 2012) (applying Texas law). Whether a contract is ambiguous is a legal question. *Id.* "A contract is ambiguous 'if its plain language is amenable to more than one reasonable interpretation.'" *Id.* (quoting *Nautilus Ins. Co. v. Country Oaks Apartments, Ltd.*, 566 F.3d 452, 455 (5th Cir. 2009)). If a contract is not ambiguous, then this court "appl[ies] its plain meaning and enforce[s] it as written." *Id.* However, if a contract is ambiguous, the court may "consider extrinsic evidence for 'the purpose of ascertaining the true intentions of the parties expressed in the contract.'" *Id.* (quoting *Friendswood Dev. Co. v. McDade + Co.*, 926 S.W.2d 280, 283 (Tex. 1996)).

When interpreting a policy, "courts are to ensure the policy is interpreted in such a way as to give effect to each term in the contract so that none will be rendered meaningless." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Willis*, 296 F.3d 336, 339 (5th Cir. 2002). Moreover, "all provisions of the policy should be considered with reference to the whole contract so that no provision is controlling." *Id.*

"Under Texas law, the maxims of contract interpretation regarding insurance policies operate squarely in favor of the insured." *Lubbock Cnty. Hosp. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 143 F.3d 239, 242 (5th Cir. 1998). When interpreting an ambiguous provision, "the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Id.* (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

Under the APIC Policy, "claim expense" includes "D. all reasonable expenses incurred by the insured and by us in . . . 4. investigating, defending and settling any coverage dispute under this policy." The dispute on appeal is the meaning of the phrase "incurred by the insured and by us."[1]

First, this court determines whether the language of the contract is ambiguous. As this court has previously observed, "the word 'and' is often construed as conjunctive." *In re Velazquez*, 660 F.3d 893, 897 (5th Cir. 2011) (applying Texas law). "However, 'and' can be interpreted as disjunctive when the context requires." *Id.* at 898. In *Board of Insurance Commissioners of*

---

[1] Before the district court, the parties contested whether the Insurance Litigation between Virginia Surety and APIC qualifies as a "coverage dispute" as listed in subsection D.4. The district court found that it does qualify as a "coverage dispute," and neither party challenges this finding on appeal.

No. 13-10451

*Texas v. Guardian Life Insurance Co. of Texas*, the Texas Supreme Court adopted language from Corpus Juris Secundum to explain when the disjunctive interpretation of "and" is appropriate:

> Ordinarily the words 'and' and 'or,' are in no sense interchangeable terms, but, on the contrary, are used in the structure of language for purposes entirely variant, the former being strictly of a conjunctive, the latter, of a disjunctive, nature. Nevertheless, in order to effectuate the intention of the parties to an instrument, a testator, or a legislature, as the case may be, the word 'and' is sometimes construed to mean 'or.' This construction, however, is never resorted to except for strong reasons and the words should never be so construed unless the context favors the conversion; as where it must be done in order to effectuate the manifest intention of the user; and where not to do so would be to render the meaning ambiguous, or result in an absurdity; or would be tantamount to a refusal to correct a mistake.

180 S.W.2d 906, 908 (Tex. 1944) (quoting 3 Corpus Juris Secundum § 1068 (now 17A Corpus Juris Secundum Contracts § 411)) (internal quotation marks omitted); *see also Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28, 30 (Tex. 1978) (recognizing that *Board of Insurance Commissioners* looked to Corpus Juris Secundum "in stating the rule for interpreting 'and' to mean 'or'").

In certain situations, courts applying Texas law have interpreted "and" to be disjunctive. For example, in *Velazquez*, this court examined a deed of trust between a mortgagor and a mortgagee securing a note executed for the purchase of the mortgagor's home. Section 9 of the deed provided that if

> . . . there is a legal proceeding that might significantly affect Lender's interest in the Property and/or right under this Security Instrument . . . then the Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property *and* rights under the Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's action can include but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . . Any amounts disbursed by the Lender under this Section 9 shall become additional debt of the Borrower secured by this Security Instrument.

8

*Velazquez*, 660 F.3d at 895–96 (emphasis added). The mortgagor filed for bankruptcy under Chapter 13, and the mortgagee filed a proof of claim in the bankruptcy action. *Id.* at 895. The proof of claim included $200 in "Post-Petition Bnk. Atty. Fees." *Id.* The mortgagee argued that the fees were recoverable pursuant to Section 9. *Id.* However, the bankruptcy court interpreted the deed of trust as allowing only the recovery of fees that were incurred to protect both the mortgagee's interest in the property and its rights under the Security Instrument. *Id.* at 896. The bankruptcy court further found that the mortgagee's "interest in the property—i.e., the Velazquezes' homestead—cannot be affected by the Velazquezes' Chapter 13 proceedings because 11 U.S.C. § 1322(b)(2) expressly provides that a Chapter 13 plan may not modify a home lender's contract rights." *Id.* (internal quotation marks and alterations omitted).

This court reversed. First, it cited *Lanier v. Spring Cypress Investments*, a Texas state appellate court case. *Id.* at 898 (citing *Lanier v. Spring Cypress Inv.*, No. 01-93-00414, 1995 WL 489427 (Tex. App.—Houston Aug. 17, 1995, no pet.) (mem. op., not designated for publication)). In *Lanier*, a note provided that "[m]aker shall be fully liable to Payee or other holder of this note . . . for: (a) ad valorem and other taxes, assessments and impositions paid by Payee *to protect its interest and the lien of the Deed of Trust securing this note*." *Id.* (emphasis in original) (internal quotation marks omitted) (citing *Lanier*, 1995 WL 489427, at *2). The Texas appellate court "interpreted the language of the note as imposing liability 'for any taxes paid by Lanier to protect either or both his interest and the lien.'" *Id.* (quoting *Lanier*, 1995 WL 489427, at *3). Second, this court explained that "consideration of Section 9 as a whole requires construing 'and' to mean 'either or both' to effectuate the clear intent of the parties." *Id.* This court noted that under Section 9, the mortgagee's actions could include "paying

reasonable attorneys' fees to protect its interest in the Property *and/or* rights under this Security Instrument, including its secured position in a bankruptcy proceeding." *Id.* at 899 (internal quotation marks omitted). It then reasoned that "[i]n light of this language, it is clear that the Deed of Trust contemplates entitlement to attorney's fees incurred to protect [the lender's] interest in the property or rights under the Deed of Trust." *Id.* Thus, to interpret "and" in the conjunctive sense "would impermissibly render portions of the agreement meaningless and frustrate the intentions of the parties as made clear by Section 9 as a whole." *Id.*

In *Aerospatiale Helicopter Corp. v. Universal Health Services, Inc.*, a Texas appellate court examined the meaning of "and" in the context of an indemnity provision in a lease agreement for a helicopter. 778 S.W.2d 492, 495 (Tex. App.—Dallas 1989, pet. denied). The lessor was a helicopter manufacturer; the lessee was a healthcare provider that used the helicopter as an air ambulance. *Id.* at 495. An indemnity clause in the lease provided that the lessee would indemnify the lessor

> . . . against any and all losses, damages, injuries, claims, demands and expenses including legal expenses of whatsoever kind and nature arising on account of (i) the use or operation of the helicopter or any part thereof, by whomsoever used or operated other than the LESSOR, its agents, servants, or employees *and* (ii) the installation or removal of any unit of equipment pursuant to any provisions of this lease.

*Id.* at 500–01 (emphasis added). Universal Health argued that in order to establish that the underlying claims fell within the scope of the indemnity clause, Aerospatiale was required to prove that the claims satisfied both subsections. *Id.* at 501.

The Texas appellate court rejected this argument. The court noted that it was "mindful of the fact that indemnity agreements are to be strictly construed in favor of the indemnitor," and it further acknowledged that "in common usage 'and' is conjunctive and 'or' is disjunctive." *Id.* at 502.

However, the court explained that "[o]ne of the recognized uses of 'and' is to refer to 'either or both' of two alternatives, when 'or' might be interpreted as referring to only one or the other." *Id.* Looking at the contract language, the Court concluded that "[a] common sense reading of the indemnity agreement is that Universal agreed to indemnify Aerospatiale for liability arising from two separate circumstances which the lease placed under Universal's exclusive control: use and operation of the helicopter, and alteration of the helicopter." *Id.*

In support of its position that the APIC Policy is not ambiguous, Trammell Crow cites *American National Insurance Company v. Wilson State Bank*, a Texas state appellate court decision. 480 S.W.2d 296 (Tex. Civ. App.—Amarillo 1972, no pet.). In *Wilson State Bank*, American National Insurance Company would offer a policy of hospital and medical insurance to the depositors of a bank in a county of a state. *Id.* at 297. American National would issue a numbered franchise to the bank, and each franchise would be limited to the county in which the bank was located without regard to the addresses of the depositors. *Id.* American National would then contact the depositors, and if the depositors subscribed to the insurance, American National would draw a draft for the premium on the depositors' accounts in the bank. *Id.* American National granted a franchise to Wilson State Bank in Lynn County, Texas. *Id.* Each policy issued under the franchise contained a provision stating that "American National shall not have the right to refuse to renew any Benefit of this policy during the Renewal Period of such Benefit unless, at the same time, it declares its intention to non-renew all policies of the same class which were issued on this form in the same state *and* county." *Id.* at 298 (emphasis added). Three years after the Wilson State Bank franchise was granted, American National decided not to renew the policies in Lynn County. *Id.* Wilson State Bank and a number of policyholders sued,

seeking an injunction to prohibit the non-renewal of the Lynn County policies unless American National refused to renew all policies of the same class in Texas. *Id.* American National argued that under the policy, it had the right to decline to renew all policies in Lynn County without the obligation not to renew all policies of the same class in Texas. *Id.*

The Texas Court of Civil Appeals rejected American National's argument, holding that the insurance company "deliberately restricted its right to non-renew the Lynn County policies only if it declared its intention to non-renew all policies of the same class in the State of Texas." *Id.* at 299. The court explained that "[o]rdinarily, nice distinctions in language are not favored, and the desired meaning of the language is that which would be attached by the ordinary person of average understanding in purchasing the insurance." *Id.* at 300. Therefore, "[h]ad appellant meant to convey its right of non-renewal on a selected area basis only, it would have been simple to eliminate the phrase 'state and,' or to substitute for the phrase 'in the same state and county' such language as 'in the same state *or* county,' or 'in the same county of this state,' or some other expression free from doubt." *Id.*

As mentioned above, "[a] contract is ambiguous 'if its plain language is amenable to more than one reasonable interpretation.'" *Horn*, 703 F.3d at 738 (quoting *Nautilus Ins. Co.*, 566 F.3d at 455). Under Texas law, "and" can be used disjunctively, as *Velazquez*, *Lanier*, and *Aerospatiale Helicopter* demonstrate. To be sure, "and" may also be used conjunctively, as was the case in *Wilson State Bank*. However, considering that Texas law accepts both the conjunctive and the disjunctive use of "and," the plain language of the definition of claim expense is amenable to more than one reasonable interpretation—that is, "and" can be interpreted conjunctively or disjunctively. Thus, under the definition of "ambiguous" set forth in *Horn*, the

provision "all reasonable expenses incurred by the insured and by us" is ambiguous.

If a provision is ambiguous, under Texas law, "the court must adopt the insured's construction of the provision, 'as long as that construction is not unreasonable, even if the construction urged by the insurer appears more reasonable or a more accurate reflection of the parties' intent.'" *Lubbock Cnty. Hosp. Dist.*, 143 F.3d at 242 (quoting *Nat'l Fire Ins. Co.*, 881 S.W.2d at 555). Thus, the question becomes whether Trammell Crow's, the insured, construction—using "and" in the conjunctive sense—is unreasonable.

In the context of the APIC policy, Trammell Crow's construction is unreasonable. As previously mentioned, "courts are to ensure that the policy is interpreted in such a way as to give effect to each term in the contract so that none will be rendered meaningless," and  "all provisions of the policy should be considered with reference to the whole contract so that no provision is controlling." *Nat'l Union Fire Ins. Co.*, 296 F.3d at 339. Looking at the APIC policy as whole, it appears that the policy contemplates that either one party or the other will incur the costs of investigating an occurrence, offense, claim or suit; defending a suit; pursuing rights of recovery against others; and investigating, defending and settling any coverage dispute under the policy.

Just above the provision defining "claim expense," there is a provision regarding APIC's obligations in the defense of suits and in the investigation and settlement of claims:

A.     We shall have the right, but not the duty or obligation to:

    1.     defend or participate in the defense of any "suit" against the insured and
    2.     investigate and settle any "occurrence", offense, claim or suit.

B.     If we choose not to investigate any "occurrence", offense or claim, or not to defend any "suit" against the insured, you will see to it that all

13

> necessary investigation and defense is made, and will, to the best of your ability effect settlement we agree to. You agree to discharge this obligation solely by means of your contract with the claim service provider stated in the schedule of this endorsement for claim adjustment services. If such services do not run to the ultimate disposition of all claims or 'suits' to which this insurance applies, we shall have the right to approve a replacement or to assign to NATLSCO, Inc. to provide claim adjustment services at your expense.

This provision contemplates that if APIC exercises its right to defend, then it will be responsible for defending and investigating an offense, claim, or suit. However, if APIC chooses not to participate, then Trammell Crow will be responsible for defending and investigating an offense, claim, or suit. In this manner, the costs of defending and investigation will be incurred either by APIC or by Trammell Crow. If the "claim expense" provision were read not to cover costs only incurred by APIC or costs only incurred by Trammell Crow, then costs incurred investigating a suit as well as costs incurred defending suit would never qualify as a "claim expense." This reading would render subsections D1 and D2 of the definition of "claim expense" effectively meaningless,[2] which would be an unreasonable result.

Further supporting that "and" should be read disjunctively, there is a provision of the policy entitled "Reimbursement" which states:

> In the event we pay all or any part of the **Deductible Amount** in order to effect settlement of any claim or suit, the first named insured shall promptly, upon notification of the action taken, reimburse us for any such part of the **Deductible Amount** that has been paid by us including any claim expense.

This section of the policy specifically describes a situation in which a claim expense is paid by APIC, requiring reimbursement from Trammell Crow. In light of the principle that "all provisions of the policy should be considered with reference to the whole contract so that no provision is controlling," the inclusion of this reimbursement requirement further indicates that "claim

---

[2] The definition of "claim expense" includes "D. all reasonable expenses incurred by the insured and by us in 1. investigating an occurrence, offense, claim, or 'suit', 2. defending a 'suit' . . . ."

expense" includes costs incurred by either or both Trammell Crow or APIC. *Nat'l Union Fire Ins. Co.*, 296 F.3d at 339.

Accordingly, "and" should be construed in the disjunctive, and costs incurred by either or both Trammell Crow or APIC qualify as a "claim expense." Therefore, APIC can recover the defense costs it incurred in the Insurance Litigation up to the deductible amount. We affirm the district court on this issue.

## III.

The second issue presented is whether Trammell Crow is barred from asserting that the deductible has been met pursuant to the doctrine of collateral estoppel. Federal law governs the application of collateral estoppel in a diversity suit involving a prior federal judgment. *Rabo Agrifinance, Inc. v. Terra XXI, Ltd.*, 583 F.3d 348, 353 (5th Cir. 2009); *see also Hardy v. Johns-Manville Sales Corp.*, 681 F.2d 334, 337 (5th Cir. 1982). To establish collateral estoppel under federal law, a party must make three showings:

(1)     that the issue at stake be identical to the one involved in the prior litigation;

(2)     that the issue has been actually litigated in the prior litigation; and

(3)     that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

*Rabo Agrifinance*, 583 F.3d at 353. Further, "[t]he parties to the suits need not be completely identical, so long as the party against whom estoppel applies had the full and fair opportunity to litigate the issue in the previous lawsuit." *Id.* Although usually an affirmative defense, collateral estoppel may be raised *sua sponte* by the district court, particularly if both actions were brought in courts of the same district, as is the case here.[3] *United Home*

---

[3] The Insurance Litigation and the Current Litigation were both in the Northern District of Texas.

*Rentals, Inc. v. Tex. Real Estate Comm'n*, 716 F.2d 324, 330 (5th Cir. 1983) (recognizing that "in the interest of judicial economy, *res judicata* may properly be raised by a district court *sua sponte*, particularly where both actions are brought in the courts of the same district"); *see also Meador v. McFaddin*, 172 F.3d 869, 1999 WL 129938, at \*1 (5th Cir. 1999) (unpublished) ("Although usually an affirmative defense, collateral estoppel may be raised *sua sponte* by the district court if both actions were brought in courts of the same district."). As mentioned above, this court reviews the district court's application of collateral estoppel *de novo. Bradberry*, 732 F.3d at 549.

Although neither party raised the issue of collateral estoppel in their memoranda to the district court regarding the cross-motions for summary judgment, the district court found that the doctrine barred Trammell Crow from arguing that it had met its deductible under the APIC policy. On appeal, Trammell Crow argues that the district court's determination in the Insurance Litigation that the APIC deductible had not been met did not include or consider APIC's defense costs as a "claim expense." Thus, according to Trammell Crow, the deductible issue in the Insurance Litigation did not involve the same facts and issues as the deductible issue in the Current Litigation. APIC counters that collateral estoppel does apply because the district court ruled in the Insurance Litigation that the APIC deductible had not been met and Trammell Crow failed to appeal that determination.

For collateral estoppel to apply, the issue at stake in the Current Litigation must be identical to the issue at stake in the Insurance Litigation. *See Rabo Agrifinance*, 583 F.3d at 353. In the Insurance Litigation, the district court examined whether Trammell Crow had met its deductible based on the damages and claims expense then existing in November 2009, which did not include APIC's defense costs in the Insurance Litigation. The issue at

stake in the Current Litigation is different. Now the question is whether Trammell Crow has currently met the deductible, considering the newly added claim expense of APIC's defense costs in the Insurance Action. Therefore, the doctrine of collateral estoppel does not bar Trammell Crow from arguing that it has met its deductible under the APIC Policy, which would obligate APIC to pay any claim expense in excess of the deductible.[4] Accordingly, the district court erred in not considering whether Trammell Crow had met its deductible after accounting for APIC's defense costs, and we reverse on this issue.

## CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED IN PART and REVERSED IN PART and the cause is REMANDED for further proceedings consistent with this opinion.

---

[4] Looking at the district court's ruling on the parties' cross-motions for summary judgment, it is apparent that the district court did not include APIC's defense costs in its consideration of the collateral estoppel issue. The district court framed the issue as "whether Trammell Crow's costs in the Colorado Action exceeded its deductible under the APIC Policy." Additionally, the district court made its determination, stating: "The Court has reviewed the prior order [from the Insurance Litigation] presented by the parties as summary judgment evidence and concludes that it addressed the issue of whether Trammell Crow met the APIC deductible with the payments made by Trammell Crow itself as well as the payments made by Virginia Surety on Trammell Crow's behalf, which eroded the deductible." Nowhere in its analysis does the district court address the extent to which APIC's defense costs further impacted the deductible.