# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2026

Lyle W. Cayce
Clerk

No. 25-10489

Porch.com,

*Plaintiff—Appellant*,

*versus*

Gallagher Re, Incorporated, *formerly known as* Willis Re,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:24-CV-1475

Before Jones, Duncan, and Douglas, *Circuit Judges*.
Stuart Kyle Duncan, *Circuit Judge*:

This appeal concerns a contract dispute between Appellant Porch.com (Porch) and Appellee Gallagher Reinsurance (Gallagher). Porch sued Gallagher for failing in its obligations as Porch's reinsurance broker. The district court dismissed Porch's claims with prejudice. We AFFIRM in part, REVERSE in part, and REMAND for further proceedings.

I

Homeowners of America Insurance Co. (HOA) is a casualty and property insurance company and a wholly owned subsidiary of Porch. In

2017, HOA entered into a reinsurance-intermediary-authorization agreement (RIAA) with Gallagher, a reinsurance broker.[1] The RIAA authorized Gallagher "to procure and administer reinsurance" for HOA and provide "administrative services" in connection therewith. In 2021, Gallagher brokered a reinsurance agreement between HOA as insured, Whiterock as insurer, and Vesttoo, a reinsurance-finance company that raised funding for the coverage.

Under the HOA–Whiterock reinsurance contract, Whiterock would get part of the premiums HOA received from its insureds and would indemnify HOA for specified losses. HOA and Gallagher also signed an addendum, stating Whiterock was "not approved . . . for the risk being placed" and Gallagher could not "guarantee[] [Whiterock's] financial position and solvency." The letter also stated Gallagher "ha[d] not assessed the collateral required to support obligations in the above contract" and therefore "recommend[ed] that [HOA] seek separate professional advice to protect [its] interest, including specialist advice in the relevant jurisdiction on the collateral/security available."

The agreement Gallagher brokered between HOA, Vesttoo, and Whiterock stated that China Construction Bank (CCB) would provide a letter of credit. Such a letter was not provided, though. HOA was given only a collateral letter stating that Yu Po Finance would eventually provide a letter of credit from CCB. Despite that, Gallagher continued to refer to the Yu Po collateral letter as a "letter of credit" and assure HOA that the reinsurance policy was funded. Ahead of the 2023 renewal, Gallagher provided a second

---

[1] The reinsurance agreement was initially between HOA and Willis Re. Gallagher is Willis Re's successor in interest. We thus refer to Gallagher throughout when referencing the RIAA.

letter of credit purporting to be from CCB that differed significantly from the original Yu Po letter.

As a result, HOA believed it had proper reinsurance coverage. Based on this assumption, in 2022, HOA authorized Vesttoo to remove $25 million from the reinsurance account in order to provide liquidity to Vesttoo investors. In July 2023, though, media reports revealed that Vesttoo had posted invalid letters of collateral and had filed for bankruptcy. HOA contacted CCB to verify its letter of credit, but CCB stated it had never issued any such letter. HOA immediately terminated its contract with Vesttoo and began searching for alternative coverage.

At that point, the value of HOA's reinsurance facility was essentially the amount that HOA had paid in, minus the $25 million fee Gallagher had authorized for Vesttoo. The new coverage HOA obtained came at a higher cost. Additionally, the Texas Department of Insurance placed HOA under temporary supervision and Porch had to inject tens of millions of dollars to reinforce HOA's position.

Porch sued Gallagher for breach of contract, claiming Gallagher had not fulfilled its obligations under Sections 5, 11, and 13 of the RIAA. Specifically, Porch alleged that Gallagher had failed to retain various documents (Section 5), comply with applicable laws (Section 11), and provide administrative services (Section 13).

The district court granted Gallagher's motion to dismiss, holding that Gallagher did not breach the RIAA. The court also declined to grant Porch leave to amend because, in the court's view, any amendment would be futile.

Porch now appeals.

No. 25-10489

## II

We review a dismissal under Federal Rule of Civil Procedure 12(b)(6) *de novo*, "accept[ing] all well-pleaded facts as true and constru[ing] the complaint in the light most favorable to the plaintiff." *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020) (quotation omitted). To withstand a motion to dismiss, a complaint must allege "more than labels and conclusions," for "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must state a "plausible claim for relief," rather than facts "merely consistent with" liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

## III

On appeal, Porch argues the district court erred by dismissing its breach-of-contract claims. Porch contends it plausibly stated a breach-of-contract claim under Sections 5, 11, and 13 of the RIAA.[2]

Under Texas[3] law, a breach-of-contract claim requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l v. Egle Grp.*, 490 F.3d 380, 387 (5th Cir. 2007). "Whether a party has breached a contract is a question of law for the court." *X Techs., Inc. v. Marvin Test Sys., Inc.*, 719 F.3d 406, 413 (5th Cir. 2013).

---

[2] Porch also argues that the district court erred by not allowing it to amend its complaint under Federal Rule of Civil Procedure 15. Porch failed to ask for leave to amend, however, and so cannot raise the issue for the first time on appeal. *See United States ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003); *Doe v. Prairie View A & M Univ.*, No. 24-20128, 2025 WL 2222991, at *4 (5th Cir. Aug. 5, 2025).

[3] The parties agree Texas law applies.

4

When interpreting a contract, a court seeks the parties' "true intent" as expressed in the contractual language. *Nat'l Union Fire Ins. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995). Such language is given its "ordinary and generally accepted meaning" unless it is "intended to impart a technical or different meaning." *Am. Mfrs. Mut. Ins. v. Schaefer*, 124 S.W.3d 154, 158 (Tex. 2003). If its terms can be given a definite meaning, the contract is not ambiguous and should be interpreted as a matter of law. *DeWitt Cnty. Elec. Coop. v. Parks*, 1 S.W.3d 96, 100 (Tex. 1999). "Whether a contract is ambiguous is a question of law that must be decided by examining the contract as a whole in light of the circumstances present when the contract was entered." *Universal Health Servs., Inc. v. Renaissance Women's Grp., P.A.*, 121 S.W.3d 742, 746 (Tex. 2003). "An ambiguity arises when an agreement is susceptible to more than one reasonable meaning after application of established rules of construction." *Ibid.*

A

First, we consider whether Porch pled a breach of Section 5 of the RIAA.

That section requires Gallagher to "[r]etain for at least ten (10) years such records, in relationship to the reinsurance placed and serviced, as may be required by statute or regulation in the states in which the Company conducts business." This includes the duty to "[r]etain . . . [d]irectly from any assuming reinsurer, written evidence that the assuming reinsurer has agreed to assume the risk." Porch argues those obligations encompassed Gallagher's duty to obtain from CCB documents showing it agreed to underwrite the risk at issue. We disagree.

Porch's interpretation contradicts Section 5's plain meaning, as the district court correctly ruled. To "retain" means to "hold in possession or under control; to keep and not lose, part with, or dismiss." *Retain*, BLACK'S

LAW DICTIONARY (12th ed. 2024). But Porch would read into "retain" an obligation to procure documents not already in Gallagher's possession. The word cannot bear that meaning. *See Horn v. State Farm Lloyds*, 703 F.3d 735, 742 (5th Cir. 2012) ("[T]he parties' intent is governed by what they said, not by what they *intended* to say but did not." (quotation omitted)).

Moreover, even if Gallagher had such an obligation, the RIAA requires Gallagher to retain documents only from a "reinsurer." CCB is not a reinsurer. *See, e.g.*, *Great Atl. Life Ins. v. Harris*, 723 S.W.2d 329, 330 (Tex. App. 1987) (a "reinsurer" is "an insurance company or underwriter which deals only with other insurance companies as its policyholders" (quotation omitted)). Indeed, Section 3 specifically designates entities like CCB as "financial institutions." Transforming CCB into a "reinsurer" would read an unwritten obligation into Section 5.

The district court therefore did not err in dismissing Porch's claims under Section 5.

B

We next consider Section 11 of the RIAA, which requires Gallagher to "[c]omply with U.S., E.U., U.K., and any other applicable economic or trade sanctions laws." Porch argues this provision required Gallagher to comply with Texas insurance laws because they are "economic" in nature. We disagree.

As the district court explained, Porch "read[s] the term 'economic' in isolation." "Contract terms," however, "must be considered in the context of the contract as a whole." *Austin Tr. Co. v. Houren*, 664 S.W.3d 35, 42 (Tex. 2023). The word "economic" is part of the phrase "economic or trade sanctions laws." Confirming that reading, the same section later refers to "persons or entities sanctioned under[] U.S., E.U., U.K., or any other applicable economic or trade sanctions laws." Porch would wrest the term

6

"economic" out of context to expand the scope of the parties' bargained-for obligations. *See Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it.").

The district court therefore did not err by dismissing Porch's claims under Section 11.

C

We turn last to Section 13, which requires Gallagher to "[p]rovide 'Administrative Services,' . . . in connection with reinsurance contracts placed by [Gallagher]." The contract defines "Administrative Services" to include

> all servicing duties customarily performed by a reinsurance intermediary-broker after the placement of the reinsurance contract, including but not limited to: 1) preparing and handling, through completion of the signing process, reinsurance contracts and any addenda thereto; . . . and 5) administering all reserve funding.

Porch alleges Gallagher breached this provision by mishandling the CCB letter of credit. The district court dismissed the claim, however. It reasoned that Porch alleged only Gallagher's failure "in the placement of reinsurance," whereas Section 13 concerns Gallagher's duties "*after* the placement of the reinsurance contract." On appeal, Porch argues the court overlooked its allegations about Gallagher's post-placement conduct. We agree.

Contrary to the district court's ruling, Porch plausibly alleged lapses by Gallagher that occurred after it had placed the reinsurance contract. For instance, Porch alleged Gallagher failed to recognize the difference between the Yu Po collateral letter and a letter of credit, which is what the reinsurance

contract promised, and to notify HOA of that distinction. The task of verifying that the letter in Gallagher's possession was actually a letter of credit, Porch alleged, is the sort of administrative service ordinarily performed by reinsurance brokers. Moreover, Porch claims Gallagher incorrectly represented the collateral letter as a letter of credit, ignored red flags throughout the transaction process, assured HOA that the collateral was valid, and assured HOA it could "safely" allow Vesttoo's $25 million withdrawal from the reinsurance account.

In response, Gallagher argues that Porch would transform Section 13's purely ministerial tasks into duties to investigate the solvency of third parties or detect whether a bank's employees forged a collateral letter. We disagree. Porch's allegations plausibly come within the language of Section 13, which broadly required Gallagher to perform all "servicing duties . . . customarily performed by a reinsurance intermediary-broker," including "administering all reserve funding." Porch did not allege that Gallagher needed to conduct a forensic audit of any reinsurer or third party to uncover that the Yu Po collateral letter was not a letter of credit.

At a minimum, Section 13 is ambiguous with respect to Gallagher's duties here. A contract is ambiguous if it "is subject to two or more reasonable interpretations after applying the pertinent rules of construction." *King v. Baylor Univ.*, 46 F.4th 344, 362 (5th Cir. 2022). As noted, Section 13 broadly imposes on Gallagher "all servicing duties customarily performed by a reinsurance intermediary-broker after the placement of the reinsurance contract." Contrary to the district court's ruling, it is at least reasonable to interpret that provision as including Gallagher's duties with respect to the letter of credit. Furthermore, what servicing duties are "customarily performed" by an intermediary broker is a fact question inappropriate for resolution by motion to dismiss. *See Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 485 (Tex.

No. 25-10489

2019) ("When consideration of evidence as to industry custom and usage is appropriate, it is a question of fact for the jury . . . .").

Accordingly, we hold the district court erred by dismissing Porch's Section 13 claim.

IV

The district court's judgment is AFFIRMED in part and REVERSED in part. The case is REMANDED for further proceedings consistent with this opinion.